**CENTRAL THEATRES, INC., v. HENRIETTE WILKINSON, et vir**

18 So. (2nd) 755                                    January Term, 1944
June 9, 1944                                                En Banc
Rehearing granted July 18, 1944

590

*Henderson, Franklin, Starnes & Holt* and *Parker Holt,* for appellant.

*Roy D. Stubbs* and *A. F. Whitney,* for appellees.

THOMAS, J.:

One night the appellees purchased tickets for admission to the Ritz Theater in Fort Myers and took their seats while a motion picture was in progress. They sat nearer the screen than the rear of the theater or, as one of them related, "about two-thirds way down as we came into the theatre . . . fairly close to the exit sign" and "a little forward" of the door. While they were intent upon the picture something suddenly struck the appellee Henriette Wilkinson in the eye causing such severe pain that she screamed and had to be assisted to the lobby by her husband and another patron. When they arrived there neither the manager nor any attendant could be found and, the box office being locked, it was necessary for the husband to go to a telephone a block away to summon a doctor and the police. Meanwhile no person connected with the institution appeared.

Examination by several physicians and the use of the X-ray disclosed that a BB shot had lodged in appellee's eye. An operation was necessary to remove the object, and as a consequence of her unfortunate experience appellee lost completely the sight of the injured eye. So there is no dispute in the evidence about the fact that this appellee was grievously and painfully injured while occupying a seat in the theater, which, we may add, she had a right to believe was secure from any such danger.

We pause now to discuss the general principles of law by which the responsibility of persons conducting public places of amusement may be gauged. From our study of the matter we are convinced that by the weight of authority they are not insurers. Johnson v. Hot Springs Land and Improvement Co., 76 Or. 333, 148 p. 1137, L.R.A. 1915 F. 689 (citing Turlington v. Tampa Electric Co., infra); Glynn v. Lyceum Theatre Co., 87 Conn. 237, 87 Atl. 796. See 26 R.C.L. page 714, 62 C. J. 866; also Birmingham Amusement Co. v. Norris, 216 Ala. 138, 112 So. 633, 635, 53 A.L.R. 840, where the Ala-

bama Court held that the proprietor of an amusement place while not an insurer against injury to patrons due to "their own missteps or disabilities" was liable as a matter of law "where the causating defect was . . . discoverable by ordinary inspection."

In Turlington v. Tampa Electric Company, 62 Fla. 398, 56 So. 696, 698, 38 L.R.A. N.S. 72, Am. Cas. 1913D, 1213, we adopted the rule: "Where one undertakes to render a service by furnishing accommodations of a public nature, the law imposes a duty to use proper care, precaution, and diligence in providing and maintaining the accommodations in a reasonably safe condition for the purposes to which they are adapted, and are apparently designed to be used." Although the accommodation involved in that case was a swimming pool, while here it is a theater, the statement seems appropriate in the instant case. When the appellee became its patron the appellant was duty bound to exercise care, caution, and diligence to provide as well as maintain a place where she would be reasonably safe while the relationship lasted. It is insisted by the appellees that this duty was not fulfilled, while their adversary counters with the assertion that the injury suffered was the result of an occurrence which could not have been reasonably anticipated, Jacobs v. Hagenback-Wallace Shows, 198 Mich. 73, L.R.A. 1918 A 504, 164 N.W. 548, and that no negligence could be charged to it because of failure to guard her against a danger so improbable as not to reflect upon the wariness of the appellant.

This introduces two other phases of the event, namely, the condition of the door of the exit near which the appellees were seated, and the activities of certain persons without the theater. In passing to this door from the seats occupied by them it would be necessary to go toward the rear of the theater a few paces, the width of three or four rows of seats, then turn to the right, part some curtains, and traverse a short hallway. The door was equipped with a "panic-lock" and so constructed, in accordance with the requirements of Section 823.06, Florida Statutes, 1941, and F.S.A., that it would open outward upon slight pressure from the inside. A pane of glass near the lock had been broken, and the janitor

had replaced it with a piece of wallboard. The door opened directly upon Patio de Leon on which various shops fronted. Although apparently a public way it was used only by pedestrians patronizing the stores and by vehicles loading and unloading merchandise. So much for the defective door—now for the action outside.

While the appellees were being entertained by the motion picture three boys were playing "cops and robbers" in the Patio de Leon. The "robbers" advanced toward the emergency door and were warned by the "cop," who was armed with an air rifle which discharged BB pellets, that if they entered he would shoot. The "robbers" dislodged the wallboard and entered the theater, whereupon the "cop" carried out his threat and fired through the open door. We have been at pains to describe the exact places in the theater occupied by appellees because obviously they were not in the line of fire and the pellet must have ricochetted from the wall of the hallway through the curtains in order to strike the appellee Henriette Wilkinson. It is patent, too, that the curtains must have been parted at the exact time of the shot, probably by the escaping "robbers."

The appellant contends these circumstances were so unusual and danger from someone opening this door so remote that it would not have been reasonably anticipated or the injury prevented. At this point the position seems tenable, and we think that were we to conclude with this chapter of the event the responsibility of the appellant could not be fixed solely because of the fact that the defective pane had been temporarily repaired by substituting for the glass a piece of walboard. When we go further into the testimony offered by the plaintiff to bolster its claim we find the condition of the door not so unimportant or insignificant as it now seems, nor the presence of the "cop" and "robbers" so casual.

The "cop" testified he and the "robbers" had been playing in and around the theater for a considerable part of, if not all, the time the appellees were inside. The boys had been in the lobby and the rest rooms and for a while watched the picture without having been charged any admission,—all this

while they had carried one or two guns with them. They had fired their weapons many times "at some poles and things" in the patio. A man described as the "ticket taker," who the manager testified was in charge of the place at the time, knew the boys well; observed them with the rifles inside and outside the theater; saw the boys shoot; did not remonstrate; and himself actually shot the weapons several times. The boys made no attempt to conceal the guns, which they had with them even when they sat in the auditorium and watched the show. Other employees of the theater also knew the youths carried the rifles into the theater.

One of the merchants who conducted his business on the Patio de Leon had noticed the broken pane in the door and had seen boys playing around this exit for two or three weeks. He was not certain that he had seen them go into the auditorium that way, but he knew the defective door could be opened by reaching through it because he had seen it opened in this manner "one time when no one had the key for the janitor to get in. . . ."

Some features of this affair were contradicted, but there was abundant evidence to suport the version we have given, which the jury patently adopted. If we ignore the proof that those connected with the theater and responsible for its proper operation and management had knowledge of the presence and actions of the "cop" and "robbers" then the argument that there was no duty to patrol the adjoining street, no reason to anticipate such a strange event, no occasion to expect harm to a patron by the defective door might have weight. If this had been an isolated incident when some boys happened in the course of their game to fire from a public way into a theater the very moment a door chanced to open, the shot glancing from a wall to strike and blind a patron, it might be said that the operator of the amusement place could not have foreseen the danger. Each circumstance, including the defectiveness of the door, might have been counted inconsequential. But all these assume importance when we consider the knowledge gained by the representatives of appellant in ample time to have provided against the mishap. The man in charge did not discourage the boys as they

paraded in and out the lobby, the toilet, the theater, bearing with them an air gun or two. They were allowed to enter and enjoy the show while thus armed and were not even charged admission. He actually encouraged them by not only allowing them to watch the motion picture without pay but by actually shooting the guns several times himself. It was known that the pane in the door was broken, for the janitor who repaired it had entered the theater by the same means the boys employed the night of the injury.

At the outset we remarked that immediately following the mishap when appellees reached the lobby and while the husband was searching for a place where he could telephone a physician no one associated with the operation of the show was present or appeared. This was established by the evidence of the appellees. It was, however, contradicted by a young man sixteen years of age who claimed to have been present. He was, according to the testimony of the manager, merely training under supervision of the "doorman" for a position, but he was not considered an employee and was not being compensated. This trainee, when asked why he was present, replied: "I was holding the door down for the boy that was supposed to be there." The boy who was "supposed to be there" was the same person the manager testified had charge at the time. This is but another circumstance indicating lack of exercise of reasonable care for the safety of the appellees and other patrons. At a time when appellant should have been aware that danger might be expected from the boys who seemed to have the run of the theater armed with air rifles and unrestrained no one remained to watch save a very young man who apparently had no responsibility and no authority. We think the danger could have been reasonably anticipated and that failure to apprehend and properly guard against it was negligence proximately causing the appellee damage.

The appellant questions the propriety of the court's ruling in sustaining an objection to its testimony proffered to show that for a period beginning eleven years and ending four years before the occurrence the exit door was kept open for the purpose of ventilation and no injuries to patrons re-

sulted. From the very nature of the event with which we are concerned, commencing at the time the "cop" and "robbers" appeared on the scene and continuing until appellee was hurt, and the remoteness of the time mentioned in the proffer there seems no reason to doubt the wisdom of this ruling. Moreover, appellant had already been permitted to introduce evidence that for several years immediately prior to the appellee's experience there had been no "accident or injuries to persons who were in the . . . Ritz Theatre . . . from shooting of rifles or other forms of bullet into the theatre." We have studied the other questions involving admissibility of certain testimony and evidence and the giving and refusing of certain charges, but they reflect no reversible error in the trial judge's decisions on the points they present, so the judgment in favor of Henriette Wilkinson for $5,000 and in favor of A. R. Wilkinson for $276.54 is approved.

Affirmed.

TERRELL, BROWN, ADAMS and SEBRING, JJ., concur.

BUFORD, C. J., and CHAPMAN, J., dissent.

BUFORD, C. J., dissenting:

I am unable to concur in the opinion prepared by Mr. Justice THOMAS because as I see the record no actionable negligence is made to appear. The injury was not one which could have been reasonably foreseen. The air-rifle shot which injured plaintiff was put in motion by one who was outside the building and over whom the management of the theatre is not shown to have had any control. The record affirmatively shows that the door through the opening of which the shot passed before striking the plaintiff was closed and fastened just prior to the accident but was opened just at the time of the accident by a trespasser. It is not shown that the trespasser had ever before so opened the door.

Our sympathies are aroused by the unfortunate results of the action of irresponsible boys playing in the public-way, but I fail to see that the defendant was responsible either for

the shooting of the air rifle in the public way or for the opening of the door by the trespasser, or for the result to the plaintiff. So, I think the judgment should be reversed.

CHAPMAN, J., concurs.

PER CURIAM:

A rehearing having been granted in this cause and the case having been further considered upon the record and upon the original briefs and argument of counsel for the respective parties; it is thereupon ordered and adjudged by the Court that the judgment of the circuit court in this cause be and it is hereby affirmed and adhered to on rehearing.

TERRELL, THOMAS, and ADAMS and SEBRING, JJ., concur.

BUFORD, C. J., BROWN and CHAPMAN, JJ., dissent.