[No. 30845.    Department Two.    August 4, 1949.]

GENE BERRY, *a Minor, by Lloyd M. Berry, his Guardian ad Litem, Appellant,* v. DAVID HOWE *et al., Respondents.*[1]

[1]Reported in 208 P. (2d) 1174.

*Bogle, Bogle & Gates, Thomas L. Morrow,* and *J. Tyler Hull,* for appellant.

*Preston, Thorgrimson & Horowitz,* for respondent.

GRADY, J.—This action was brought by Gene Berry, a minor, acting through Lloyd M. Berry, his guardian *ad litem,* against David Howe to recover damages as the result of being struck by a golf ball driven by the defendant. A trial was had before a jury and a verdict was returned in favor of the defendant. Judgment was entered dismissing the action. The plaintiff has taken this appeal. We shall refer to the minor as though he were the sole appellant.

The theory upon which the action was brought was that the respondent was negligent in that he drove a golf ball in a careless and imprudent manner, off the fairway, and failed to give timely warning of the hitting of the golf ball, or doing so after he drove, when he knew, or should have known, that the direction in which the golf ball was driven was likely to cause harm to others and to appellant. The defenses of the respondent were that he was not negligent

and appellant was guilty of contributory negligence in that he failed and neglected to keep a lookout for golf balls being driven; that he failed and neglected to use reasonable care toward keeping himself in a safe position on the course, and failed and neglected to heed the warnings given him of the approach of the golf ball which injured him.

On August 18, 1946, appellant was of the age of eleven years and was a caddy at Glendale Golf Course in Seattle. The respondent was one of a foursome engaged in a golf game. Appellant was employed by one of the other members of the foursome. The foursome finished the eighth hole of the course and proceeded to the ninth tee to play that hole. The appellant and another caddy proceeded to a position to the right of the ninth fairway to watch the drives from the ninth tee. While the first two drives were being made appellant and another caddy were walking up an incline. They stopped at a water tap which was off the fairway a few feet and got down on their hands and knees to get a drink. This point was approximately four hundred feet from the ninth tee. The view from the ninth tee was unobstructed. There was no one teeing off at this time. The caddy with appellant was attacked with a nosebleed. The attention of appellant was diverted to his companion. It was at this juncture that respondent made his drive. When he made the drive the ball deflected in the direction of appellant. The third caddy, who was in the employ of respondent and was standing on the fairway a few feet away, shouted a warning. The appellant raised his head and was struck by the ball on one of his eyes. The ball had hit the ground and bounced forward. There is a custom among golf players when about to make a drive to warn others who may be in the zone of danger by calling out "fore." The respondent did not do so on this occasion. About the instant of the impact respondent shouted the usual warning, but it came too late to avert the injury.

There is a conflict in the evidence as to whether respondent, when he drove the ball, could have observed from appellant's position whether he was watching the play or

his attention was directed to his companion. This has an important bearing on the question of the duty of respondent to have given a warning prior to making his drive. The jury was permitted to view the scene of the accident, at which time its members assembled at the ninth tee and observed appellant and the two other caddies while they re-enacted the scene at the time of the injury as previously testified to by them.

In the game of golf the principal danger to a caddy is the possibility of being hit by a swiftly moving golf ball driven by a player of the group, one of which he may be serving, or one driven by a player in some other group. Many of the caddies are quite young boys. In this field of the law the courts have considered the mutual rights, obligations and duties as between the golf player and those of his group, players in other groups, visitors on the golf course, the caddy employed by the golfer or the caddies employed by those in his group and in other groups. Certain rules of conduct common to all have been applied. We shall confine this opinion to the situation presented by the evidence in this case, namely, a golf player in a foursome and a caddy in the employ of one of the other players in the same foursome. Some of the cases we shall cite had under consideration a different relationship, but the applicable principles were the same.

In all of his conduct which might result in harm to the caddy the golfer must exercise reasonable and ordinary care under the circumstances, and the caddy likewise has the duty of exercising such care for his own safety. Driven balls do not always travel in the straight course intended and frequently deflect to the right or left, and thus a rather extensive zone of danger may be created. The golf player must reasonably foresee the likelihood of injury to others from his driven golf ball and the caddy must likewise reasonably foresee danger.

It is the duty of a golf player in the exercise of ordinary care to give to a caddy timely warning of his intended drive if the caddy is not aware of such intention, and the

player either knows or by the exercise of ordinary care under the existing circumstances should know of such unawareness. He must use ordinary care to observe whether a caddy is within the general direction of his drive, or otherwise within a zone of danger, if the ball should deviate from its intended course, and exercise ordinary care to see that he is adequately warned. He is not an insurer of the safety of a caddy with reference to the balls he drives, nor is he guilty of negligence merely because a ball driven by him deflects from its intended course, but he must have in mind the possibility of deflection and exercise reasonable care with reference to warning a caddy in the zone of danger. *Toohey v. Webster*, 97 N. J. L. 545, 117 Atl. 838, 23 A. L. R. 440; *Stober v. Embry*, 243 Ky. 117, 47 S. W. (2d) 921; *Page v. Unterreiner*, 130 S. W. (2d) (Mo. App.) 970; *Simpson v. Fiero*, 260 N. Y. S. 323 (affirmed in 262 N. Y. 461, 188 N. E. 20); *Povanda v. Powers*, 272 N. Y. S. 619, 152 Misc. 75; *Everett v. Goodwin*, 201 N. C. 734, 161 S. E. 316; *Alexander v. Wrenn*, 158 Va. 486, 164 S. E. 715; *Page v. Unterreiner*, 106 S. W. (2d) (Mo. App.) 528. The latter rule has special application to the case before us. In his testimony respondent stated that he had been playing golf for about fifteen years; that he was regarded as one of the hardest drivers at Glendale Golf Course; that his main trouble was in being wild on his shots and that such was usually the case with hard drivers; that occasionally he got a little off line but would not say that every shot he took went to the right or left, otherwise he would not shoot in the 80's.

The appellant contends that he should be awarded a new trial because of claimed errors made by the court with reference to instructions given to the jury whereby the jury was misled as to the applicable principles of law and thereby induced to render a verdict in favor of the defendant. Frequently where the question of negligence is involved, there are some things which one must have done in order that he may claim that he used reasonable care. The evidence may be such that reasonable minds cannot differ so that

the court may be able to say as a matter of law what the conduct must have been, and in other situations the evidence may be such that it is for the jury to so determine. In the trial of cases before a jury, the trial judge should have great latitude of decision, and the reviewing court should not be unduly meticulous in its consideration of instructions by the court to the jury in those respects. With these thoughts in mind we approach a consideration of the errors appellant claims were made by the court in the giving of the following instructions, referred to in the record as Nos. 8 and 10:

### "No. 8

"You are instructed that if you find from the evidence in this case that the caddies were stationed at their usual place to watch drives from the ninth tee, and that from such position they could see the balls being driven from the ninth tee, then there was no duty on the part of the defendant to give any warning of his intention to drive a ball from the ninth tee, in the absence of knowledge on his part of any inattention on the part of the minor plaintiff, and said defendant under such circumstances would not be negligent in failing to give such warning before driving his ball.

"In this connection, you are instructed that the defendant had a right to assume that caddies stationed at a point where they could watch the drives from the ninth tee would do so, and he had a right to proceed on this assumption until he knew or in the exercise of reasonable care should have known to the contrary."

### "No. 10

"There being no evidence before you that defendant knew of any inattentiveness on the part of the plaintiff Gene Berry, then under the facts and circumstances of this case there was no duty on the part of defendant to warn said plaintiff that he was about to drive from the ninth tee unless you further find that the circumstances were such that the defendant, exercising ordinary care, not only could but should have known of such inattentiveness on the part of said plaintiff, bearing in mind that defendant was not required to anticipate such inattentiveness, nor required to use extraordinary care.

"In determining whether or not any inattentiveness on the part of said plaintiff should have been known by defendant,

acting as a reasonably prudent golfer under the same or similar circumstances, you have the right to consider the distance or proximity of plaintiff to the ninth tee, whether or not the caddies were in their regular positions to watch drives from the ninth tee, whether or not other drives from the defendant's foursome had preceded defendant's drive, whether or not plaintiff was facing generally towards or away from said tee, and any other facts and circumstances in the case touching this question."

■ The appellant contends that the court erred in giving instruction No. 8. He properly excepted to that part of the second paragraph of the instruction in which the jury was told that the respondent had a right to assume that caddies stationed at a place where they could watch drives from the ninth tee would do so. He assigns before this court certain alleged errors touching the first paragraph of the instruction, but we cannot consider them because no exception was taken to any part of this paragraph. Rule 10 of Rules of Pleading, Procedure and Practice requires that exceptions to instructions shall specify the paragraphs or particular parts excepted to and shall be sufficiently specific to apprise the judge of the points of law or questions of fact in dispute. This was not done. The parts of instructions No. 8 and 10 to which the appellant excepted relate to the subject of duty to warn. By paragraph two of instruction No. 8 the jury was told, as a matter of law, that respondent had the right to assume that appellant stationed at a point where he could watch the drives from the ninth tee would do so, and that he had a right to proceed on such assumption until he knew or in the exercise of reasonable care should have known to the contrary.

■■ There is a general rule of law that, under some circumstances, a person has the right to assume that another person will so conduct himself as to avoid an impending danger, and may act on such assumption until it reasonably appears otherwise to him, but we do not think that principle was properly applied by the court to the evidence. When respondent was about to make his drive the three caddies were in plain sight about four hundred feet away.

The appellant and one other caddy were just off the fairway and were on their hands and knees at a water faucet. The caddy employed by respondent was on the fairway very close to its edge and a few feet from the other two caddies. The caddy employed by respondent had the duty to so place himself that he could observe where the ball driven by respondent finally landed so he could locate it, and also had the duty to exercise reasonable care for his own safety if the driven ball deflected from its intended course and became dangerous to him. The appellant had only the latter duty to perform. Although appellant had been a caddy for about two years he was but eleven years of age. Ordinarily one cannot indulge in the same assumptions as to conduct in such a case as he might with reference to an older person.

The question of what one may assume with reference to the conduct of another finds expression in automobile collision cases, and this court, in common with other courts, has decided that a driver of an automobile on a public highway has the right to assume that other drivers will obey the rules of the road and may rely and act upon such assumption until the contrary appears. The following are some of the cases so holding: *Mathias v. Eichelberger,* 182 Wash. 185, 45 P. (2d) 619; *Nystuen v. Spokane County,* 194 Wash. 312, 77 P. (2d) 1002; *Warner v. Keebler,* 200 Wash. 608, 94 P. (2d) 175. Operating with this rule is another one to the effect that if a person knows, or by the exercise of reasonable care should know, that the other party is not doing or observing that which he should do or observe to prevent injury, then the former cannot indulge in the assumption. This principle can be gathered from the foregoing cases and also the statement of the rules in 45 C. J. 705, Negligence, § 86:

"One is not under a duty of anticipating negligence on the part of others, but *in the absence of anything which gives or should give notice to the contrary,* a person is entitled to assume, and to act on the assumption, that others will exercise ordinary care for their own safety.

"With respect to an infant, one may reasonably expect the infant to exercise that degree of care which a person of the same intelligence, capacity, discretion, and experience would naturally and ordinarily use." (Italics ours.)

In the case of *Heg v. Mullen,* 115 Wash. 252, 197 Pac. 51, we had before us an instruction of like import to the one now under consideration. The principle embodied in the following statement by the court we think is applicable to this case:

"While this instruction states the law correctly as a general proposition, it was incorrect as applied to the facts of this case as testified to by the respondents. It will be remembered that they testified that, when they were making the turn at the intersection of the road, they saw the appellant's car coming at the rate of forty-five or fifty miles an hour. Under these circumstances, it would be incorrect to instruct that the respondents had a right to assume that the appellant was obeying the law. They knew as a matter of fact that he was not so doing. The instruction should have been to the effect that the respondents had a right to assume that the appellant would obey the law unless they knew, or had reason to believe, that he was at the time violating it."

A factual difference is that in the *Heg* case the ones relying upon the assumption testified that they saw the other car coming at a speed which was unlawful. However, we think the rule pronounced by the court is applicable because there is evidence from which the jury could have found that respondent either knew the appellant was inattentive to the drive of the ball, or in the exercise of reasonable care could have so observed.

■■ The instruction, taken as a whole, carried the idea that the right of assumption existed only in the absence of knowledge of inattention on the part of appellant. It should have been to the effect that, the respondent had the right to assume the appellant, situated as he was, would watch the drive respondent was about to make, unless he knew or had reason to believe appellant was not doing so. The instruction was incomplete with reference to certain facts

the jury might have found existed to such an extent as to constitute reversible error.

The effect of the first part of instruction No. 10, "There being no evidence before you that defendant knew of any inattentiveness on the part of the plaintiff Gene Berry . . .", was to take away from the jury any consideration of what would have been the duty of respondent with reference to warning if he had actual knowledge when he made his stroke that appellant had his attention diverted. The court limited the duty to warn to a situation in which the respondent by the exercise of ordinary care either could have or should have known of any inattentiveness of appellant. What actual knowledge respondent had was known only to him, and could not be affirmatively established by the testimony of other witnesses. Proof of such fact must necessarily have come from respondent or be established by circumstantial evidence. In his testimony respondent stated:

"Q. So that at neither time, when you took your practice swing or before you struck the ball, did you look and see what position the caddies were in? A. That is sort of a difficult question because I—in lining up the ball with the fairway it is pretty hard to look up there and not see the caddies, or not see where the caddies were; but you can still see them and not be conscious of the fact that you looked at them. If there had been anything wrong I think I would have noticed it. Q. So that if you had looked you would have seen the caddies in the position they were in, and what they were doing? A. Well, I didn't say that I didn't look. Q. You don't think you did though? A. I am just not conscious of the fact that—I didn't say to myself that the caddies were up there and they are OK or they are not OK. I must have looked up in that direction in order to line the shot up, which I invariably do, and I must have seen the caddies. And evidently at this time I can't remember anything wrong."

When we take into consideration the evidence that was before the jury and the fact that what transpired was acted before the jury on the occasion of its view of the premises, we are of the opinion that it was for the jury to

determine and find whether or not the respondent actually saw and knew, when he made his drive, that appellant was unaware that the drive was being made, and that the instruction should have been to the effect that, if the jurors believed from the evidence that the respondent knew, or by the exercise of reasonable care could or should have known, that the appellant was inattentive to the drive he was making, then it was the duty of the respondent to have given warning before making the drive. We have decided many times that where some act takes place in plain view of another, or it could have been seen and observed had the person looked, he can not afterwards be heard to say that he did not see the act done. We are of the opinion that the court erred in withdrawing from the jury the question of whether the respondent had actual knowledge that appellant was not watching his drive.

The verdict for the respondent being a general verdict, we are unable to determine whether it was based upon a finding that the respondent was not negligent, or a finding that appellant was guilty of contributory negligence. The respondent argues that the judgment should be affirmed upon the ground that contributory negligence of appellant appears as a matter of law from his own testimony. The trial court submitted this question to the jury by proper instructions. It appears to us, considering the age of appellant, his experience and all of the facts and circumstances disclosed by the record, reasonable minds might differ as to whether appellant exercised reasonable and ordinary care for his own safety. Where such is the case a jury question is presented. We are of the opinion that the question of contributory negligence was for the jury to determine.

The judgment is reversed and the case remanded for a new trial.

JEFFERS, C. J., ROBINSON, SIMPSON, and SCHWELLENBACH, JJ., concur.

---

September 7, 1949. Petition for rehearing denied.