105 So.2d 175 (1958)
Ethel GORDON and Ted Gordon, her husband, Appellants,
v.
HOTEL SEVILLE, Inc., a Florida corporation, Appellee.
No. 57-436.
District Court of Appeal of Florida. Third District.
July 22, 1958.
Rehearing Denied October 7, 1958.
*176 Walsh, Simmonite, Budd & Walsh, Miami, for appellants.
Dixon, DeJarnette, Bradford & Williams and M.R. Adkins, Miami, for appellee.
CARROLL, CHAS., Chief Judge.
The appellants, who were the plaintiffs in a tort action in the circuit court, appeal from a summary judgment entered in favor of the appellee.
The action grew out of injuries which the appellant Ethel Gordon sustained while swimming in the pool of appellee's hotel at Miami Beach where she and her husband were guests. She claimed that her injury was caused by boys engaged in boisterous conduct or horseplay at the pool, and charged the defendant hotel corporation with negligence in failing to maintain the premises in a reasonably safe condition by permitting and failing to supervise or check such boisterous conduct.
The plaintiff Mrs. Gordon was in the status of a business invitee on the premises of the hotel corporation. To her they owed a duty to keep the premises in a reasonably safe condition and to guard against subjecting her to dangers which were known or which might reasonably have been foreseen. McNulty v. Hurley, Fla. 1957, 97 So.2d 185, 187. More specifically, for an operator of a swimming pool, being an amusement or recreational area on the hotel premises, the nature of his duty to invitees who are paying guests was declared and described by the Supreme Court, speaking through Mr. Justice Thornal, in the case of Brightwell v. Beem, Fla. 1956, 90 So.2d 320, 322, as follows:
"* * * The appellees operated a public amusement area and were charged with the degree of care customarily imposed upon the operators of such facilities. This degree of care is well summarized in 52 Am.Jur., Theaters, Shows, Exhibitions, Etc., Sec. 71, p. 315, as follows:
"`The owner or proprietor of a bathing or swimming resort or pool as a place of public amusement is not an insurer of the safety of his patrons, but he must exercise ordinary and reasonable care and prudence to have and maintain his place and all appliances intended for the use of patrons in a reasonably safe condition for all ordinary, customary, and reasonable uses to which they may be put by patrons, and to use ordinary and reasonable care for the safety of his patrons, and he may be liable for injury to a patron from breach of his duty.'
"We ourselves have announced the same rule in Pickett v. City of Jacksonville, 155 Fla. 439, 20 So.2d 484; Wells v. Palm Beach Kennel Club, 160 Fla. 502, 35 So.2d 720; Turlington v. Tampa Electric Co., 62 Fla. 398, 56 So. 696, 38 L.R.A.,N.S., 72."
In the case of Quinn v. Smith Co., 5 Cir., 57 F.2d 784, which originated in the Southern District of Florida, it was held that it was a breach of such duty owed by an operator of a swimming pool, to permit boisterious, rude and dangerous conduct of persons at the pool without taking appropriate steps to control and prevent the same.
In that case, in an opinion written by Judge Hutcheson, the court said (at page 785):
"* * * It goes without saying, in fact, it is not disputed, that proprietors of bathing pools owe to their patrons a duty to exercise due care, not only in providing a safe and proper place as such, but in policing and supervising the place to protect those coming there from wanton and unprovoked assault and injuries at the hands of other persons *177 there. Especially is this duty laid upon proprietors with regard to women and children, to protect them from the rude, boisterous, and unprovoked attacks and assaults. The case made by plaintiff showed an egregious want of care, not only entitling her to go to the jury, but, if her testimony was believed, making a clear case for recovery. It showed her presence at the pool as a patron, entitled to be there; the presence there of other persons, invited to entertain and amuse those who, like plaintiff, came as paying guests; conduct of those persons, boisterous, rude, and dangerous to a degree, going on without let or hindrance, and with apparently no one there present to prevent it; that suddenly, and without warning, she was hurled into the pool by one of those persons, with resulting serious injury. Such evidence if believed made a clear case for recovery. It required the submission of plaintiff's case to the jury."
Cases dealing with the duty owed by the operator of such premises to its paying guests and the responsibility of an operator for injuries resulting from boisterous conduct and horseplay which is allowed to occur and continue without restraint, are collected and annotated in 16 A.L.R.2d 912, 932-935; 20 A.L.R.2d 8, 76-77; 29 A.L.R.2d 911, 917-920; and 48 A.L.R.2d 104, 165-166. See also, Central Theatres, Inc. v. Wilkinson, 154 Fla. 589, 18 So.2d 755, 757-758.
From the pleadings, affidavits and the interrogatories and answers thereto which were before the court, it appeared that boisterous conduct or horseplay by a number of boys around the pool, including pushing or throwing boys into the pool, had occurred almost daily for a period of time and on the day in question, and that such activities were permitted to go unrestrained by defendant.
With such boisterous activities going on unchecked at one end of the pool, Mrs. Gordon went into the pool at the other end, which was the shallow end. A short time later while she was swimming there face down, a body landed on her, following which she blacked out or fainted, was assisted from the pool, and became hysterical. A pool attendant identified as having a brace on his neck came up and proceeded to administer first aid, having the people move back from around Mrs. Gordon and apparently taking charge. Mrs. Gordon did not know whose body struck her or how it occurred. She was in no position to know, as she was swimming face down when it happened and she appeared dazed thereafter. Mr. Gordon was in the pool area, but was not in the immediate vicinity at the time and did not observe the accident.
The deposition of Mr. Gordon stated that the pool attendant whom he identified as one with a brace on his neck, and who elsewhere was shown to be one Lloyd Mendow, was a witness to the accident. Mr. Gordon further recited in his deposition an admission which was made by the pool attendant Mendow that "these fellows picked one another up bodily and threw him into the pool, and one of them landed on her head." Mr. Gordon also stated that the attendant identified the boy who landed on Mrs. Gordon, as a boy named Al.
An admission against interest made by an employee in the course of and within the scope of his employment and relating to a matter which is not beyond the penumbra of his duties or employment, is a recognized exception to the hearsay rule, and such a statement by the employee will be admissible against the employer as an admission against interest. Myrick v. Lloyd, 158 Fla. 47, 27 So.2d 615.
On the motion for summary judgment, the matter of the quality, weight and credibility of the evidence presented up to that point in the case was not a concern of the court, because "neither the trial court nor the appellate court is justified in weighing facts and meting out justice according to the conclusion reached." Yost v. Miami *178 Transit Co., Fla. 1953, 66 So.2d 214, 216. It is settled, by that and later cases dealing with motions for summary judgment, that all such evidence must be viewed in the light most favorable to the party moved against; and in this case that included evidence of the status of the plaintiffs as paying guests of the hotel, evidence of the unchecked boisterous conduct or horseplay of certain other guests or patrons at the pool, and the reported admission of the pool attendant attributing Mrs. Gordon's injury to conduct of the boisterous group.
The court granted summary judgment on the ground that there was no showing of any causal connection between the horseplay and the injury to Mrs. Gordon. In this respect we must hold the trial court was in error. The feature which the court felt was missing, was supplied by evidence of an admission by the hotel employee, who was in the performance of duties as a pool attendant, that the accident resulted from the horseplay at the pool.
We are not unaware or unmindful of the heavy and extensive trial dockets in the circuit court in Dade County, and as stated by the Supreme Court in Delany v. Breeding's Homestead Drug Co., Fla. 1957, 93 So.2d 116, 119, "We fully realize the value of summary judgment procedures in expediting the disposition of cases and in disposing of those matters where the material facts are not in conflict."
However, we repeat here what was said by the Supreme Court, in the opinion authored by Mr. Justice Drew, in Williams v. City of Lake City, Fla. 1953, 62 So.2d 732, 733, as follows:
"The right to a jury trial is a very sacred part of our system of jurisprudence and, while we have held that the granting of a summary judgment does not infringe upon such constitutional right, that very holding carries with it the idea that such judgments should be sparingly granted and only in those cases where there remains no genuine issue of any material fact. To put it another way, such motion should be granted only where the moving party is entitled to a judgment as a matter of law. It was never intended by this rule that cases should be tried by affidavit or that affidavits, interrogatories or depositions or similar evidence, could be used as substitutes for a jury trial. To sum it all up, if there are issues of fact and the slightest doubt remains, a summary judgment cannot be granted."
For the reasons stated, the summary judgment appealed from is reversed and the cause is remanded for further proceedings consistent herewith.
Reversed and remanded.
HORTON and PEARSON, JJ., concur.