105 So.2d 569 (1958)
The JESTERS, a corporation d/b/a Beauclerc Country Club, Appellant, and Norman S. Miller, who joined in the Appeal, Appellants,
v.
Robert TAYLOR, a Minor, by his father and next friend, Hubert Taylor, and Hubert Taylor, Individually, Appellees.
Supreme Court of Florida.
October 1, 1958.
Rehearing Denied October 30, 1958.
Francis P. Conroy, Harry T. Gray of Marks, Gray, Yates & Conroy, Jacksonville, for The Jesters, d/b/a Beauclerc Country Club, appellant.
Howell & Kirby, Jacksonville, for Norman S. Miller, appellant.
Cleveland & Goodfriend, W.A. Cleveland, Jr., and Sam Goodfriend, Jacksonville, for appellees.
PER CURIAM.
It is the view of Justices Thomas, Hobson, Roberts, Drew, and O'Connell and Chief Justice Terrell that the finding of liability against Norman S. Miller is supported by the evidence and that his appeal is without merit. It is their further holding that the damages are inadequate for the reasons stated in the special opinion of Mr. Justice ROBERTS and that the cause is reversed and remanded for the purpose of a new trial on damages only.
Justices Thomas, Hobson, O'Connell and Chief Justice Terrell hold that the appeal of the Jesters, a corporation d/b/a "Beauclerc Country Club" is without merit and that the record supports the finding of liability against such corporation; further, that the award is inadequate for the reasons above stated, and the cause is reversed and remanded as to the Jesters, a corporation, etc., for a new trial on the question of damages only.
*570 It is the view of Justices Roberts and Drew that the Jesters, a corporation, is not liable and that the judgment against such corporation should be reversed and the cause dismissed as to it, for the reasons stated in the opinion of Mr. Justice ROBERTS.
The other questions have been considered and found to be without merit.
It is so ordered.
TERRELL, C.J., and THOMAS, HOBSON, ROBERTS, DREW and O'CONNELL, JJ., concur.
ROBERTS, Justice (concurring in part and dissenting in part).
The appellees, Bobby Taylor and his father, were plaintiffs below in a suit to recover their respective damages for injuries sustained by Bobby when he was struck by a golf ball while "shagging" balls on the practice fairway of the Beauclerc Country Club, a golf club owned and operated by the defendant, the Jesters (referred to hereafter as "the country club"). The ball was hit from the practice tee by the defendant, Norman Miller. Both defendants have appealed from a verdict and judgment in favor of the plaintiffs. By cross-appeal on an assignment of error directed to the denial of their motion for new trial on the question of damages only, the plaintiffs question the adequacy of the damages assessed by the jury in their favor.
Neither defendant filed a motion for new trial; however, both defendants filed a motion for judgment in accordance with their previous motions for directed verdict made at the close of the plaintiffs' case and again at the close of all the evidence and have assigned as error the denial of their post-verdict motions. The ultimate issue under this assignment of error is whether the evidence and reasonable inferences to be drawn therefrom, when construed in the light most favorable to plaintiffs, were insufficient as a matter of law to prove the plaintiffs' case under the issues made by the pleadings. Hartnett v. Fowler, Fla. 1957, 94 So.2d 724.
The unfortunate accident resulting in serious injuries to Bobby arose out of the following series of events: Bobby, an eleven-year-old negro boy, was assigned by the caddy master to retrieve or, in golf parlance, "shag" balls for a Mrs. Chamison on the practice fairway. Mrs. Chamison was, and was known to the caddy master to be, a "short-ball" hitter. Mrs. Chamison took up a position near the middle or toward the right-hand side of the practice tee, and Bobby stood on the practice fairway about 100 or 125 yards from the tee. After Mrs. Chamison had been practicing for some time, the defendant Miller came to the left side of the practice tee to hit a few practice shots in advance of a tournament. Miller was the club champion and a "long-ball" hitter. Since his average drive (about 235 yards) exceeded the length of the practice fairway (about 215 to 220 yards), it was his custom when practicing his drives to shoot diagonally from the left end of the practice tee to the right-hand corner of the practice fairway. He followed his usual custom on the day in question, and there was evidence that Bobby's position on the practice fairway put him directly under or very near the "line of fire" of Miller's ball in its trajectory from the tee to the corner of the fairway. Miller had hit at least two balls from the practice tee before hitting the one that struck Bobby, both of which were high balls and would have been well over Bobby's head even if he had been directly under them. The drive that hit Bobby was described by one witness as a "low hook  what we call a caddy killer  a low liner." It hit Bobby in the eye, just as he was turning around after picking up one of Mrs. Chamison's balls, according to his testimony. Bobby said he didn't hear anyone cry "Fore," nor had he seen Mr. Miller on the practice tee. According to Miller's testimony, he hadn't noticed Bobby, either, until after his ball hit him, and therefore didn't give him any warning.
*571 The charge of negligence made against Miller was that he was negligent in failing to exercise ordinary care for Bobby's safety and in failing to give adequate and timely notice of his intention to drive the ball that struck Bobby. On this appeal, the sole contention made on Miller's behalf is that the evidence showed, as a matter of law, that Bobby assumed the risk incident to shagging balls on the practice fairway and of the injury sustained, thus relieving Miller of liability. This contention cannot be sustained.
This court has said that "[v]oluntary exposure is the bedrock upon which the doctrine of assumed risk rests." Bartholf v. Baker, Fla. 1954, 71 So.2d 480, 483. Assumption of risk involves "a choice made more or less deliberately and negatives liability." Byers v. Gunn, Fla. 1955, 81 So.2d 723, 727. As stated in Prosser on Torts, § 51, p. 376: "[The plaintiff] makes the choice at his own risk, and is taken to consent that the defendant shall be relieved of responsibility. The legal position is then that the defendant is under no duty to protect the plaintiff."
It is true, as here contended on behalf of Miller, that by voluntarily participating in the sport as a caddy on the practice fairway, Bobby assumed the risk of injury from the ordinary and usual hazards inherent in the activity  assuming, of course, that he was old enough and experienced enough to appreciate the danger, and the evidence indicates that he was. Cf. Payne v. City of Clearwater, 1944, 155 Fla. 9, 19 So.2d 406; Benjamin v. Nernberg, 1931, 102 Pa.Super. 471, 157 A. 10; Benoit v. Marvin, 1958, 120 Vt. 201, 138 A.2d 312; Campion v. Chicago Landscape Co., 1938, 295 Ill. App. 225, 14 N.E.2d 879; Klinsky v. Hanson Van Winkle Munning Co., 1955, 3 N.J. Super. 439, 119 A.2d 166; cases collected in the annotation in 138 A.L.R. at pages 554 et seq. But the negligence of the defendant is not, ordinarily considered to be one of the "ordinary and usual hazards" the risk of which is assumed by the plaintiff, see Toohey v. Webster, 1922, 97 N.J.L. 545, 117 A. 838; Povanda v. Powers, 1934, 152 Misc. 75, 272 N.Y.S. 619; Biskup v. Hoffman, 1926, 220 Mo. App. 542, 287 S.W. 865, although once he is fully informed of such negligence, then the risks arising from such negligence may be assumed. Prosser on Torts, § 51, p. 385. (But see the Restatement of Torts, § 466, p. 1230, classifying this type of assumption of risk as a form of contributory negligence.)
In the instant case, according to testimony which the jury had the right to believe, Bobby did not know that the defendant Miller was on the practice tee, attempting to loft balls over his head to the far corner of the practice fairway, until after he was struck by the ball. We think there can be no doubt that the jury had the right to find that the defendant Miller was negligent in failing to use ordinary care to observe whether there were any caddies in the "line of fire" on his practice drive who might be endangered thereby and to make sure they were adequately warned of his intention to hit a practice shot in their direction. Cf. Miller v. Rollings, Fla. 1952, 56 So.2d 137; Toohey v. Webster, supra, 117 A. 838. As stated in Miller v. Rollings, supra [56 So.2d 137], "One who is about to strike a golf ball, must, in the exercise of ordinary care, give adequate and timely notice to those who are unaware of his intention to play and who may be endangered by the play." This is a universally recognized custom and rule required of each golfer, Petrich v. New Orleans City Park Improvement Ass'n, La. App. 1939, 188 So. 199, and we think it is applicable as well to the practice fairway as to the regular playing fairways.
Obviously, the player on the practice tee is not required to call "Fore" each time he makes a practice shot when there are other players and their caddies on the practice tee and fairway, if they are aware of his presence on the practice tee, any more than the player on the regular tee must warn the caddies of the other members of his foursome of his intention to drive from *572 the tee, if they knew or should have known of his intention. See Berry v. Howe, 1949, 34 Wash.2d 403, 208 P.2d 1174; Id., 39 Wash.2d 235, 235 P.2d 170; Miller v. Rollings, supra, 56 So.2d 137. And there was some obligation on the part of Bobby to pay attention to what was going on around him. Cf. Miller v. Rollings, supra, 56 So.2d 137. But the failure of the plaintiff to use ordinary care "is not properly a matter of assumption of risk but of the defense of contributory negligence." Prosser on Torts, § 51, p. 385.
Since knowledge of the risk is the basis of "assumption of risk", it must be concluded that the trial judge did not err in declining to rule, as a matter of law, that Bobby assumed the risk of his injury.
As to the liability of the defendant country club, the actual negligence on the part of the country club here relied upon as the basis of liability is summarized in plaintiffs' brief as follows:
"The Country Club placed the minor plaintiff on a dangerous firing range without any protection, without any warning and at the same time knowing, with reasonable certainly, that Mr. Miller would be hitting golf balls dangerously close to the minor Plaintiff or over his head. With the uncertainty of the flight of a golf ball it was only a matter of time which could have been reasonably foreseen by the Country Club that injury would result from its actions.
"In this case, if the Country Club had promulgated and enforced the reasonable rule as approved by its golf professional to the extent that a player hitting off the practice tee would hit straight in front of him, then this awful injury would not have resulted."
It is also charged that some liability on the part of the country club arises out of instructions given to Bobby by the caddy master about a week before the accident as to his duty when shagging balls. Bobby said that "He [the caddy master] told me not to be watching nobody else, just to watch the ladies' balls and the men's balls because I lost them and he must have went back and told him." But Bobby also said that he had almost got hit, once before, by another player's ball while shagging and knew that if he didn't look out he might get hit by a ball hit by some other player from the practice tee; that it was usual for two or three players to be on the practice tee at the same time and that he knew he had to look out for balls from all of them. In the light of this testimony it seems clear that only by an unwarranted stretch of the imagination could the jury conclude that the caddy master's instruction to Bobby  if interpreted to mean that Bobby should not watch for the balls of the other players on the practice tee, and the caddy master denied that he so instructed Bobby  was an efficient concurring cause of the accident.
It was stipulated that the defendant country club had no rule prohibiting diagonal driving from the practice tee nor, in fact, any rules regulating the use of the practice tee and fairway. It was also shown that none of the golf courses in the area had any such rules  all relying on the rules of "common sense" and common courtesy. Evidence of a custom or usage is not a complete defense to a charge of negligence although it is, of course, evidence to be considered by the jury as to the standard of care required of the defendant. See Westborough Country Club v. Palmer, 8 Cir., 1953, 204 F.2d 143.
It goes without saying that there can be no liability on the part of any defendant unless the defendant has breached a duty owed to the plaintiff. Bobby was not technically an employee of the country club, see City of Miami v. Fulp, Fla. 1952, 60 So.2d 18, but he was certainly a "business invitee" in the sense that he was there at the implied invitation of the club for their mutual interest, benefit or advantage. See Oliver v. Oakwood Country Club, Mo. 1951, 245 S.W.2d 37. As such, the club owed *573 him the duty to use reasonable care in maintaining the premises in a reasonably safe condition and to give him warning of latent and concealed perils, known to the club or which by the exercise of due care should have been known to the club, and which were not known to Bobby and which by the exercise of due care could not have been known to him. Hickory House v. Brown, Fla. 1955, 77 So.2d 249. Moreover, the proprietor of a place of amusement owes a duty to his invitees to use reasonable care to protect them against injury through the negligent or wrongful acts of other invitees on the premises where he has reasonable cause to anticipate such acts and the probability of injury resulting therefrom. See Central Theatres, Inc., v. Wilkinson, 1944, 154 Fla. 589, 18 So.2d 755; Weihert v. Piccione, 1956, 273 Wis. 448, 78 N.W.2d 757; Sample v. Eaton, 1956, 145 Cal. App.2d 312, 302 P.2d 431; Berrum v. Powalisz, Nev. 1957, 317 P.2d 1090; M.G.A. Theaters, Inc., v. Montgomery, 1958, 83 Ariz. 339, 321 P.2d 1009. This rule has been applied in a golf course case involving injury to a caddy by another caddy, Oliver v. Oakwood Country Club, Mo. 1951, 245 S.W.2d 37, although it was held that there was no liability on the part of the club because the evidence left an essential element of plaintiff-invitee's case  the defendant-inviter's knowledge of the dangerous condition  wholly to conjecture.
Applying these rules to the question of the defendant country club's alleged breach of duty to plaintiff in the circumstances here present, it is clear that the "condition of the premises" and the "latent and concealed perils" referred to in the rule first above cited consist solely of the "negligent or wrongful acts of other invitees on the premises" within the meaning of the second rule cited. So the real issue here is whether the country club could reasonably have foreseen the actions of the defendant Miller and the probability of injury to Bobby resulting therefrom.
In view of Miller's testimony as to his custom of hitting practice drives diagonally across the practice fairway, we think the jury could reasonably have concluded that the defendant country club should have known of this custom, although we find no evidence that its employees had actual knowledge thereof. But, obviously, this did not create a dangerous situation if there was no caddy within the danger zone. Going one step farther, it may be that the jury could reasonably have inferred that the country club should have known that Bobby would be in the "danger zone" if Miller followed his usual custom, although again there was no evidence of actual knowledge. But the fundamental defect in the plaintiff's charge of breach of duty made against the country club is that the negligence charged and proved against Miller was that he hit his practice drives without exercising ordinary care for Bobby's safety by first looking for and observing his presence on the practice fairway in the danger zone and then warning him of his intention to drive over his head to the far corner of the fairway if he knew or should have known that Bobby was unaware of his intention. There can be no doubt that Miller could not legally have been charged with a breach of duty to Bobby in the circumstances here present if Bobby had been fully aware of Miller's intention to attempt to drive over his head to the distant target, had appreciated the danger, and had consented thereto, since this would be a typical case of "assumption of risk" as discussed above. Whether the injury to Bobby would have occurred had he been aware of Miller's presence on the practice tee and "looking out" for his drives is a matter of pure conjecture; the fact is that Bobby was not so aware. It was the concurrence of the lack of warning on the part of Miller, Bobby's unawareness of the danger, and, perforce, the absence of contributory negligence on Bobby's part, that justified the jury in imposing liability on Miller for Bobby's injury.
There is not a scintilla of evidence from which the jury could conclude that the country club knew or should have known *574 that Miller would carelessly or inadvertently fail to observe Bobby and make sure that he knew of the danger of his position on the practice fairway. Nor is there any evidence from which the jury could reasonably infer that the country club knew or should have known that Bobby, by reason of his age, lack of experience or mental capacity, was incapable of exercising that degree of care necessary to avoid the ordinary dangers inherent in "shagging" balls on the practice fairway  if, indeed, such a finding as to his capacity was justified by the evidence.
To hold that the country club was liable to Bobby for his injuries in the circumstances shown by this record would amount to a ruling that the proprietor of a place of amusement is the insurer of the safety of its "business invitees", and this is not the law. See Central Theatres, Inc., v. Wilkinson, supra, 18 So.2d 755. We are not unmindful, however, of the fact that golf clubs frequently avail themselves of the services of young children such as Bobby in the promotion of their enterprises to serve as caddies for their members and guests. This is not, technically, an "employment" of the caddy within the meaning of our workmen's compensation act. City of Miami v. Fulp, supra, 60 So.2d 18. But the relationship between the golf club and its caddies is certainly something more than its relationship with its patrons or other "business invitees". And we think it is not amiss to say that this entire subject is one that deserves legislative study as to the advisability of requiring golf clubs to provide some form of compensation, such as accident insurance, to its caddies for accidental injuries sustained on the golf course, whether or not due to the negligence of a player.
For the reasons stated, it should be held that the trial judge erred in denying the defendant country club's motion for judgment in accordance with its motion for directed verdict made at the close of all the evidence. But since the defendant Miller failed to sustain his contention that the evidence showed, as a matter of law, that Bobby assumed the risk of his injury, the verdict and judgment against Miller should be affirmed on the issue of liability.
It is readily apparent, however, that the damages assessed by the jury were grossly inadequate as contended by the plaintiffs on their cross-appeal. This court said in Remsberg v. Mosley, Fla. 1952, 58 So.2d 432, 433, that "A new trial on the question of damages only should not be granted unless liability on the part of defendant is clearly shown and it is not deemed necessary for any reason to try that issue again." The only contention as to non-liability made by the defendant Miller on this appeal having been found to be without merit, we think that the instant case is one of those exceptional cases in which an order directing a new trial on the question of damages alone is justified. Cf. Brinson v. Howard, Fla. 1954, 71 So.2d 172.
DREW, J., concurs.