306 So.2d 609 (1975)
W.D. BRASWELL, Appellant,
v.
STATE of Florida, Appellee.
No. S-178.
District Court of Appeal of Florida, First District.
January 28, 1975.
*610 W. Dexter Douglass, Douglass & Powell, Tallahassee, for appellant.
Robert L. Shevin, Atty. Gen., and Andrew W. Lindsey, Asst. Atty. Gen., for appellee.
BOYER, Judge.
Appellant here seeks reversal of a judgment and sentence following a jury verdict rendered August 23, 1972. Several points are raised by appellant, but we find only one to have merit.
During cross examination of appellant the prosecutor asked "Have you ever been convicted of a crime?" to which appellant replied "No, sir, I haven't." The prosecutor then countered with the query "have you ever been in the army?" whereupon appellant's attorney suggested that the jury be temporarily excused. The prosecutor then developed by questions to appellant, propounded out of the presence of the jury, that appellant while in the Army during the Berlin Airlift was convicted by a three officer summary court martial of larceny on September 20, 1948. When the jury returned to the courtroom the prosecutor was permitted to again ask of the appellant whether he had ever been convicted of a crime to which he answered, in light of the proceedings which had taken place out of the presence of the jury as above recited, "Yes, sir."
The exact point therefore for our determination is whether a prior "conviction" of 24 years standing for larceny in a military summary court martial proceeding is admissible in a criminal trial to impeach a defendant who has taken the stand in his own defense and has responded negatively to a question by the prosecutor as to whether he has ever been convicted of a crime.
This point has apparently never before been considered by an appellate court of this State. F.S. 90.08 provides that no person shall be disqualified to testify as a witness by reason of conviction of any crime but that:
"* * * Evidence of such conviction, including the fact that the prior conviction was for the crime of perjury, may be given to affect the credibility of the said witness, and such conviction may be proved by questioning the proposed witness or, if he deny it, by producing a record of his conviction. * * *"
The procedural requirements incident to application of F.S. 90.08 was recited by our Supreme Court in McArthur v. Cook, Sup.Ct.Fla. 1957, 99 So.2d 565, wherein it was stated, inter alia:
"* * * the proper procedural approach is simply to ask the witness the straightforward question as to whether he had ever been convicted of a crime. The inquiry must end at this point unless the witness denies that he has been convicted. In the event of such denial the adverse party may then in the presentation of his side of the case produce and file in evidence the record of any such conviction. If the witness admits prior conviction of a crime, the inquiry by his adversary may not be pursued to the point of naming the crime for which he was convicted. If the witness so desires he may of his own volition state the nature of the crime and offer any relevant testimony that would eliminate any adverse implications; for example, the fact that he had in the meantime been fully pardoned or that the crime was a minor one and occurred many years before. The restrictions on the use of this type of interrogation to reflect adversely on the credibility of a witness have been well illustrated by other cases." (99 So.2d at page 567)
*611 In 98 C.J.S. Witnesses § 507, p. 409 it is said:
"Evidence pertaining to the military court-martial record of a witness, even though the witness is accused in the criminal prosecution, has been held not admissible. However, it has also been held that a conviction of a court martial is admissible provided the offense is of the requisite type, such as one involving moral turpitude; and the fact that the offense is purely military in character does not, of itself, negative the existence of moral turpitude."
The Supreme Court of Arizona, in Medkiff v. State, 29 Ariz. 523, 243 P. 601, in 1927, held that the lower court had properly sustained objections to questions seeking to show that a witness had been convicted of desertion by a court martial, holding that desertion is purely a military offense, is not a crime under general law and that its character is not such as to involve moral turpitude or to indicate a disposition or trait that would make the witness' testimony questionable. Remoteness does not appear to have been an issue in that case.
In United States v. Frazier, U.S.C.A. 4th 1969, 418 F.2d 854, the United States Court of Appeals affirmed a refusal by a District Judge to permit impeachment of a witness by the propounding to the witness of questions on cross examination seeking to elicit information regarding two previous military offenses of being absent without leave.
The Supreme Court of Missouri in State v. Lee, 404 S.W.2d 740 (1966), recognizing the propriety under its statute (which is similar to the Florida statute) of admitting evidence of defendant's court-martial conviction for murder as being properly admitted to impeach the defendant, said:
"We arrived at that conclusion because murder is an offense involving moral turpitude and is an offense under the laws of this state as well as under military law. We have concluded, however, that evidence of a court-martial conviction for dereliction of duty is not admissible for the purpose of impeaching a defendant. This is for the reason that there is no comparable offense which is a crime under the laws of this state and it is not an offense, at least in peacetime, which involves moral turpitude." (404 S.W.2d at page 748)
The courts of Alabama have held that a conviction of a crime involving moral turpitude by the court of another state may be shown for the purpose of discrediting a witness. (Dickey v. State, 32 Ala.App. 413, 26 So.2d 532; Williams v. State, 238 Ala. 40, 189 So. 84) The Alabama courts have also held that evidence of a conviction in a Federal court is admissible to impeach a witness testifying in a state court action. (Fidelity-Phoenix Fire Ins. Co. v. Murphy, 231 Ala. 680, 166 So. 604)
In 1920 the Supreme Court of Arkansas held that it was proper to cross examine a defendant relative to his conviction by a court martial for desertion, the Court stating: "A witness may be impeached by drawing out of him on cross-examination that he has been guilty of acts of moral turpitude, and especially of crime, which reflects upon his integrity or credibility as a witness." (Jordan v. State, 141 Ark. 504, 217 S.W. 788, 790) Remoteness of the court martial conviction was not an issue in that case.
In Nelson v. State, Ala.App. 1950, 44 So.2d 802, the court considered a statute the wording of which is very similar to Florida Statute 90.08, and there held that a conviction of the offense of desertion in time of war by a United States Navy Court Martial involved moral turpitude and was admissible as affecting the credibility of the defendant who was a witness in his own behalf. The court rested the decision squarely upon the determination that desertion in time of war was an act of moral turpitude, expressly rejecting the contention that an offense purely military in character negates the existence of moral *612 turpitude. The court further said, citing numerous authorities, that the moral turpitude, as a concept, does not lend itself to a neat or exact definition. The time in which an act is done is a determining factor in judging its morality as reflected in social duty. It then quoted a definition of moral turpitude as:
"`Anything done contrary to justices, honesty, principle, or good morals; an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow man, or to society in general, contrary to the accepted and customary'. Moral turpitude implies something immoral in itself regardless of the fact whether it is punishable by law. The doing of the act and not its prohibition by statute fixes the turpitude." (44 So.2d at page 805)
Upon considering the foregoing decisions from other jurisdictions it becomes apparent that those courts have generally, when rejecting evidence of prior court martial convictions, based their reasoning upon the concept of moral turpitude. However, the Supreme Court of Florida, in Hendrick v. Strazzulla, Sup.Ct.Fla. 1961, 135 So.2d 1, has specifically rejected a differentiation based upon moral turpitude, saying:
"While it might seem logical that the statute should limit the discrediting crimes to those which reflect moral turpitude, the fact remains that the Legislature has not made any such provision. Under the statute `a crime is a crime' and no distinction is made between crimes as to the effect of the statute." (135 So.2d at page 3)
We must resolve, therefore, whether a summary court martial "conviction" constitutes a conviction of a "crime", within the meaning of the statute. We think that it does not.
Whether a general court martial conviction would be admissible is not before us, therefore we do not here consider that question. We think, however, that we may appropriately take judicial notice of just how "summary" a summary court martial proceeding was during and immediately following World War II. The officers selected to conduct the court martials seldom had any legal experience or training and little or no guide for conducting the proceeding. The presumption of innocence which is the counterstone of American criminal jurisprudence received little if any recognition. To close our eyes to such facts of common knowledge would render us little more perceptive than a mule with blinders on his bridle or the proverbial ostrich with his head in the sand.
In Roe v. State, Sup.Ct.Fla. 1928, 96 Fla. 723, 119 So. 118, the Supreme Court held that the violation of a municipal ordinance does not constitute a "crime" and that the record of a conviction of a municipal offense is not admissible to discredit a witness under the statute.
In Andrews v. State, Fla.App. 1st 1965, 172 So.2d 505, this Court said, citing 9 A.L.R.2d 613:
"* * * Likewise, evidence of specific bad acts or conduct of a defendant while in the military service which tends to discredit him has been generally considered inadmissible. * * *" (172 So.2d at page 507)
We think too that we may not overlook the time which elapsed between the "summary court martial conviction" and the trial sub judice, some 24 years. Although remoteness of prior conviction, as a basis for rejection, does not appear to have been considered by Florida courts, the general objection as to remoteness has.
In Atlantic Coast Line R. Co. v. Campbell, 1932, 104 Fla. 274, 139 So. 886, the Supreme Court, in a case arising out of a contract of insurance, said:
"The chief object in introducing evidence is to secure a rational ascertainment of facts; therefore facts should not be submitted to the jury, unless they are logically relevant to the issues. A *613 fact in a cause must be both logically and legally relevant, for even logical relevancy does not in all cases render proposed evidence admissible. A fact which, in connection with other facts, renders probable the existence of a fact in issue, should still be rejected, where, under the circumstances of the case, it is essentially misleading or too remote. Brucker v. Gainesboro Telephone Co., 125 Ky. 92, 100 S.W. 240, 30 Ky.Law Rep. 1162; Wyman v. Lehigh Valley R.R. Co., 158 F. 967, 86 C.C.A. 161; Fitzsimmons & Connell Co. v. Braun, 199 Ill. 390, 65 N.E. 249, 59 L.R.A. 421." (139 So. at page 890; emphasis added)
In Central Theaters v. Wilkinson, 1944, 154 Fla. 589, 18 So.2d 755, the Supreme Court sustained a trial court's rejection of evidence because of remoteness. (See also Loftin v. Howard, Sup.Ct.Fla. 1955, 82 So.2d 125)
In Texas, where the accused may be cross examined as to previous indictments for crimes relative to felonies or involving moral turpitude, it is generally held that the cross examination must be limited to such previous indictments as are not too remote. The determination as to remoteness is in the sound, but not unbridled, discretion of the trial judge and depends upon the degree of the crime. (See annotation in 103 ALR at page 350, and cases there cited) Further, under the Texas rule, the accused as a witness may be compelled to testify as to his previous conviction of crimes involving moral turpitude, provided they are not too remote in time, but no definite time has been fixed within which the crimes concerning which such testimony may be introduced must have been committed, since it depends upon the circumstances of each case. (103 ALR 350, 364, and cases there cited)
In Winn v. State (1908) 54 Tex.Cr. 538, 113 S.W. 918, it was said, in support of the limitation:
"Testimony of this character after a long lapse of years should not have been introduced, where there was nothing in the record to show that defendant has not reformed. In other words, the law will not permit the early indiscretions of a witness to be brought into requisition to besmirch and becloud his subsequent life. To do so, as expressed by Judge Greenlief, ... would be to preclude any possible chance of a reform, and would enable state's counsel to parade the early misdeeds of a subsequently useful life, to be introduced to becloud and discredit the subsequently honorable and useful life."
The general rule, as stated in 98 C.J.S. Witnesses § 507, p. 412 is as follows:
"In general it is not permissible to show, for impeachment purposes, a conviction so remote in time as to have no bearing on the present character of the witness; but whether a conviction is too remote is ordinarily a matter for the court's discretion in the light of all the facts, including whether there is any indication that the witness has reformed."
The United States Court of Appeals, Sixth Circuit, in 1958, held that the District Judge had erred in admitting evidence pertaining to appellant's court martial record some 27 years prior thereto. (Henderson v. United States, 6 Cir., 202 F.2d 400)
In conclusion, we hold, in the absence of any controlling precedent to the contrary, that conviction by a military summary court martial is not a "conviction" within the meaning of F.S. 90.08 and further that in order for a conviction to be admissible under that statute the crime must not have been so remote in time as to have no appreciable bearing on the witness' present credibility where there is nothing in the record to show that the witness has not reformed. As to what length of time shall constitute remoteness must be left to the sound discretion of the trial judge to be determined in light of the circumstances surrounding the particular conviction sought to be shown.
Reversed and remanded for a new trial.
*614 RAWLS, C.J., concurs.
McCORD, J., dissents.
McCORD, J. (dissenting).
Appellant, on cross examination, was asked the following question: "Have you ever been convicted of a crime?" This was a time honored and entirely proper question directed to his credibility as a witness. Appellant answered: "No, sir, I haven't." With this answer the state had the right to question appellant regarding specific crimes he had committed in order to lay a predicate for imeapchment. See Cross v. State, 96 Fla. 768, 119 So. 380. He was then asked, "Have you ever been in the army?" To which he answered, "Yes, sir." The next query was, "Were you in the army in 1948?" To which he responded, "Yes, sir." Appellant's trial counsel (who is not his counsel on appeal) then asked the court to excuse the jury, stating that he had no idea what the state was after. In the jury's absence, the state, through further cross examination, and appellant's trial counsel brought out that appellant, while a member of the U.S. Army, had been convicted of larceny on September 20, 1948, by a summary court martial in Berlin. The only objection made by appellant's trial counsel was to admitting appellant's "rap sheet" and the court pointed out to him that the rap sheet had not been offered in evidence. The court then announced that the state could ask appellant the question (regarding the army larceny conviction) and the state announced, "I'll re-ask the question before the jury if he's ever been convicted of a crime." Upon return of the jury, the state re-asked the question and appellant answered, "Yes, sir," and no further questions were asked by the state. Appellant's counsel then proceeded to bring out the time of the conviction and the fact that it was a conviction by an army summary court martial.
In the first place, appellant's trial counsel did not object to the state's questions and did not contend that a conviction of larceny by an army summary court martial was not a crime or that if so, it was too remote in time to be considered a crime. In addition, this point was not raised in appellant's motion for a new trial. Appellant has no standing to now raise this question for the first time on appeal. As stated by this court in McPhee v. State, Fla.App. (1st), 254 So.2d 406:
"It is an accepted principle of law that errors occurring during the course of a criminal trial which are not assigned as grounds in support of a motion for new trial will not be reviewed on appeal unless the order or ruling constituting error was objected to at the time it was made."
In the second place, even if proper objections had been made at trial by appellant, it is my view that a conviction of larceny (a crime involving moral turpitude) by an army summary court martial is a crime and must be considered as such by a witness when he is asked the question, "Have you ever been convicted of a crime?" It is my further view that when such question is asked, the remoteness of the crime is not a factor for consideration. As previously stated, the standard and proper question which was asked was, "Have you ever been convicted of a crime?" The word "ever" in this context includes all crimes regardless of when committed. The defendant has the privilege (which he exercised in the case sub judice) on re-direct examination to point out to the jury the remoteness of the crime and the court by which he was convicted if he desires to do so. I, therefore, respectfully dissent and would affirm.