# CHARLESTON

MATHENY et al. *v.* ALLEN.

Submitted September 11, 1907.     Decided February 4, 1908.

1. BOUNDARIES—*Location—Natural Landmark.*

It is a general rule that, in locating boundaries of land, resort is to be had first to natural landmarks, next to artificial monuments, then to adjacent boundaries, and last to courses and distances. (p. 450.)

2. SAME—*Calls for Monument.*
    Calls for adjoiners must yield, generally, to calls for monuments, where there is repugnancy between them, in a description of land. (p. 446, 449.)

3. SAME—*Rejection of Call.*
    A call irreconcilable and incongruous with another call of a grant, which appears to have been inserted by mistake, may be wholly rejected and disregarded. (p. 446, 449.)

Error to Circuit Court, Raleigh County.

Action by M. F. Matheny and others, against Henry Allen. Judgment for defendant, and plaintiffs bring error.

*Affirmed.*

M. F. MATHENY and ASHTON FILE, for plaintiffs in error.

A. D. PRESTON and JOHN W. McCREERY, for defendant in error.

ROBINSON, JUDGE:

This action of ejectment was heard upon an agreed statement of facts, by the court, in lieu of a jury. The issue is so defined between the parties that both concede that a single question is involved; and, therefore, all matters not affecting this question are precluded from recital or consideration in this opinion. That question relates to a construction of the grant under which plaintiffs claim; and, abstractly, is this: Do calls in a grant or deed for trees as corners prevail over further call therein that a line between such trees is with an old established line of an adjoining tract or survey, when it is found that such calls are inconsistent? In other words: In a description of land, in a conveyance, when there is repugnancy between them, which yields—calls for natural objects or calls for adjoiners?

Plaintiffs claim under a grant from the commonwealth to Richard Toler, ·and defendant claims under an older patent. Plaintiffs are vested, by regular conveyances and payment of taxes, with title to the Toler grant, and defendant is a tenant of those likewise vested with title to the older grant. Neither plaintiffs nor defendant, nor those under whom they respectively claim, had actual possession of the strip of land in controversy until defendant moved thereon about two months before the institution of this suit. Actual and adverse

possession under the Toler grant existed from the date of that grant, August 11, 1829; while actual and adverse possession of the tract claimed by those under whom defendant holds dates only from September 4, 1849. Plaintiffs' title, notwithstanding junior to the other, therefore, by such possession became good as against the title of the senior grant not so occupied for that period of twenty years, to so much land as is included by the description in the grant to Toler, since such possession enures to the extent of the boundaries called for by the paper under which one claims. But this brings us directly to the point at issue: What are the boundaries to the extent of which plaintiffs can claim by reason of such adverse possession, ripened into good title against the senior grant as aforesaid? If the contention of plaintiffs as to construction of the calls of the Toler grant is well founded, then the boundary called for in the deed of those under whom defendant claims, based upon title from the senior patent, interlocks with that of plaintiffs. There having been no actual adverse possession of land embraced in the interlock, except for the brief period aforesaid, the case turns solely on a construction of the description in the Toler grant.

The description in the Toler grant, construction of which as contended by plaintiffs will cause interlock with the tract owned by those under whom defendant holds and will take from them the strip of land in controversy, is as follows: "Beginning at a white oak and pine near Preston's corner * * * * S. 10. W. 116 poles to two white oaks and gum; & thence S. 83 W. 160 poles with Preston's line to the beginning." The survey and plat in this case show that this beginning corner is several hundred feet from the Preston line; that the gum and two white oaks are at even greater distance from it; and that, to extend the line running to the gum and two white oaks to the Preston line, thence following that line to Preston's corner, and thence to the white oak and pine, makes the boundary of the land in controversy, sought to be recovered by the plaintiffs. From this it will readily be observed that plaintiffs seek recovery of the land that lies between the Preston line and the line running from the two white oaks and gum to the white oak and pines, the former of which is south of the latter, but not quite parallel thereto. To put it in different phrase, plaintiffs claim that they have a

right to go the Preston line, thereby proceeding several hundred feet beyond the corner called for in the Toler grant, two white oaks and gum, then to follow the Preston line to Preston's corner, and then to connect, by a line several hundred feet in length, Preston's corner with the beginning corner called for in the Toler grant, white oak and pine. Virtually, the result of this would be to add three lines to the description of the grant. True, "with Preston's line" is called for in the grant, but survey shows that it is not the line between the two white oaks and gum and the white oak and pine, and that you cannot run "with Preston's line" between those corners, as the description in the grant seems to imply. Between the last line of the grant and Preston's line there is a wide strip of land. Can plaintiffs recover this strip? Does it belong to them by reason of the title they have acquired under the Toler grant? Shall they be compelled to stop at these corner trees, for which their title papers call, or may they go southward beyond them, several hundred feet, to Preston's line, which their title papers may mistakenly suppose is between these two corners marked by the trees?.

Intention to make the call for the Preston line one of the outside boundaries is argued on behalf of plaintiffs. But upon the present inquiry we can only look to the language of the grant for such intention, as nothing on this score is contained in the agreed statement of facts. Mistake is also argued; but, to discover it, we are confined the same. We are, therefore, bound in our consideration to the face of the description; and, whatever may have been the intention at the time, we cannot now say that anything other was intended than that which is the result of the language employed, as measured by the rules of construction which the law would have us apply.

The general rule, applicable to the case we find here, is stated in 5 Cyc. 915, as follows: "As a rule lines marked on the ground for the survey or adopted by the surveyor are to be regarded rather than call for adjoiners; and when there is a discrepancy such lines govern." The same book, at page 921, says: "In case of conflict calls for adjoiners will as a rule yield to calls for artificial monuments and marks." The authorities generally support this principle.

It seems founded on reason, and deserves sanction. The result of its application is to follow the particular and certain items of description in preference to the general or mistaken. This Court has long recognized the rule. In *Bowers* v. *Dickinson*, 30 W. Va. 709, it is held: "The descriptive calls in a survey such as, 'near the land' of a named person, must yield in locating a survey to established corners as well as to locative calls." This is only an application of the reasonable and sensible principle that the more fixed and certain is to control over that which is less fixed and certain. In the case before us, the beginning corner of plaintiff's boundary is a white oak and pine "near Preston's corner," not necessarily on Preston's line. And the last line is one running from a fixed place, two white oaks and gum, to another fixed place, the said beginning corner. But this line, according to the grant, it may be said, is to run "with Preston's line." Is not this uncertain, when "near Preston's corner" may not be on that line at all? If the beginning corner was not on the Preston line, the last line could not possibly run with it. And certain it is that the survey made in this case shows that neither of the designated corners was on the Preston line, but each quite a distance from it. This recent survey, made by order of the court, stands before us as true, no exception to its accuracy appearing; and it is referred to and relied upon by both plaintiffs and defendant in the briefs. The general call "with Preston's line" is shown by it to be an erroneous and mistaken one. Is it to prevail over the fixed monuments, about the location of which there appears no dispute herein? The very expression "near Preston's corner" gives an element of uncertainty to the call, "with Preston's line," and both expressions, being merely descriptive, must yield to the locative calls. As said in *Robinson* v. *Braiden*, 44 W. Va. 183: "The land sold was the land as run off and surveyed, which satisfies the calls of the deed, and, calling for one of the division lines was a false description which creates no uncertainty and works no injury." Whenever a call is irreconcilable and incongruous with the other calls of a grant by which the survey may be located, and which call appears to have been inserted by mistake, it may be wholly rejected and disregarded. *Smith* v. *Chapman*, 10 Grat. 445; *Hamilton* v. *McNeil*, 13 Grat. 389. The

expression "with Preston's line" is shown by the survey herein to be irreconcilable with the line between the fixed corners, and we must infer that it was inserted by mistake, and disregard it. There is no rule by which we can disregard locative calls of the grant, when they can be found, as they have been here. Though the surveyor, in running for the grant originally, may have believed that he was on the Preston line; yet, since it is now shown that he was not, claimants under the grant cannot profit by mistaken description which is in conflict with the actual survey. We must presume that the commonwealth intended only to grant to the trees, since they are fixed and certain. There should be no mistake as to their location; there could be, and was, as to the Preston line. Even though it was intended to grant to that line, most certainly it was not done, for the trees are not on it. While a vendor may intend to convey to certain objects and yet plainly does not do so, can we, in ejectment, correct the deed to conform to such intention?

In line with the principle above applied, that locative calls prevail over calls for adjoining tracts, when there is repugnancy between them, is *Burnett* v. *Burgiss*, 39 Tex. 501, the holding in which is in conformity to the weight of authority. It is there announced:  "The location of the lines of a survey is to be determined by the lines as actually run upon the ground, where this can be ascertained; nor will this rule be varied by the fact that an adherence to it would give to the locator less land than he was entitled to by his certificate. Nor is the rule varied by the fact that a call is made to run to the line of an older survey, if that line was never reached in the survey actually made, but the surveyor stopped at another line which was mistaken for it." Likewise, in the case of *Cleaveland* v. *Smith*, 2 Story 278, wherein it appeared that in a grant of land from the commonwealth of Massachusetts to the towns of Taunton and Raynhaven, the land was described as "beginning on the north line of the million acres, at a yellow birch tree, six miles east from the south-east corner," etc., (the said birch tree being marked as a monument in the original survey of the land,) whereas the birch tree did not, in fact, stand upon the said north line, as happened, but was so situated that a gore of land was left between it and the said north line, the court held that the birch tree, and not

said north line, was to be taken as the boundary of the land granted. And, as stated in *Jackson* v. *Loomis*, 18 Johns. 81: "If there is a contradiction in a description that part of it is to be taken which gives most permanence and certainty to the location."

It must not be overlooked that the calls of the Toler grant do not, in fact, call for the Preston line. They call for objects, certain trees, but these are not described as located on the Preston line. The beginning corner and the trees there named are expressly stated to be "near Preston's corner;" but, as to this beginning corner, there is no call for the Preston line. And the call for the two white oaks and pine does not say that they are on that line. True, the call from there to the beginning says "with" that line. But since the line of that call is nearly parallel with the Preston line, may it not be said that "with" means in the same general direction, as there has been no direct call for the Preston line? In no place do we find the words "to Preston's line" or "on Preston's line." Then how can we infer that the footsteps of the surveyor went "to Preston's line," or were ever on "Preston's line," and construe the description as making that line one of the boundaries? And, particularly, how can we so construe it, as one of the boundaries, when the survey herein shows that to follow the corners adopted by the original survey and named in the grant, it cannot possibly be one of the boundary lines? By the plat, we must conclude the words "with Preston's line" are mistaken description added by the original surveyor to fixed and certain description. If a man writes us a letter, saying that he is in a city situated at the confluence of the Schuylkill and Delaware rivers; that there he saw Independence Hall; and in that same letter calls the place New York, must we not, in sense, believe it Philadelphia, notwithstanding the mistaken name he has applied? "Where several particulars descriptive of the land conveyed by the deed are named therein, some of which are false, if the true are sufficient to designate the land, the false will be rejected." Tyler on Boundaries, 129; *Abbott* v. *Abbott*, 53 Me. 356; *Robinson* v. *Braiden, supra.*

It is also argued on behalf of plaintiffs that the presumption is against the construction of a description that will leave a narrow strip of land next to one of the lines. But

does this apply to a grant from the commonwealth, especially as to a junior patent? However that may be, we cannot apply such presumption to overthrow the definite location of the trees, and thereby do violence to the well recognized rule of the law. Such presumption is not fitted to the facts submitted in this case, however applicable it may be in some instances.

Upon the whole, it convincingly appears to us that we can here only apply the doctrine long recognized in this jurisdiction, as plainly announced in *Gwynn* v. *Schwartz*, 32 W. Va. 487: "In the description of lands as to questions of boundaries the rule is settled in Virginia and West Virginia that natural land marks, marked lines and reputed boundaries will control mere courses and distances or mistaken descriptions in surveys and conveyances." The phrase "with Preston's line" is the recital of a mere course, shown to be mistaken at that; which must yield to the definite calls for monuments, the corner trees. In this case, we see no reason to depart from the general rule, known to all versed in the law, that, in locating boundaries of land, resort is first to be had to natural landmarks, next to artificial marks, then to adjacent boundaries, and last to courses and distances.

Therefore, we find no error, and affirm the judgment.

*Affirmed.*