Submitted on briefs April 13, affirmed April 23, rehearing denied May 21, 1918.

## OREGON HOME BUILDERS *v.* EISMAN.*

(172 Pac. 114.)

**Boundaries—Description—Recorded Plat—Affidavit and Certificate.**

1.   A surveyor's affidavit and certificate attached to and made a part of a plat of a city addition when filed for record should be regarded as incorporated in the description of outboundaries in the tract platted.

**Boundaries—Description—Recorded Plat—Monuments.**

2.   A recorded plat of a city addition which makes the boundary lines of lots therein coincident with the surveyed line of railroad right of way recognizes the way as a monument determining the lot lines contiguous thereto.

[As to the general rule for the location of boundaries, see note in 129 Am. St. Rep. 990.]

**Pleading—Admission by Demurrer.**

3.   A demurrer admits all averments of fact well pleaded, and any reasonable and proper inference deducible therefrom.

**Boundaries — Description — Lots Adjoining Railroad — Mistake in Survey.**

4.   Since, by Section 878, subdivision 2, L. O. L., and otherwise, the rule is that monuments govern measurements, where a survey of a plat of a city addition adjoining a railroad overlapped the line of the railroad's right of way by reason of a surveyor's mistake in assuming that the track occupied the center line of the original sur-

---

*As to boundaries on conveyance by plat, see note in 42 **L. R. A.** 509.                                            REPORTER.

vey of the right of way, the surveyor's notations on the map must yield to the boundary of the railroad company's easement, and lots conveyed in such addition adjoining the railroad right of way will be bounded accordingly in construing the deed.

From Multnomah: JOHN P. KAVANAUGH, Judge.

In Banc.

This is an action to recover damages for an alleged breach of the covenants of seizin and of warranty in a cenveyance of real property. The complaint substantially alleges that the plaintiff, the Oregon Home Builders, and the defendant, the Co-operative Realty Company, are and at all the times stated were respectively Oregon corporations; that on March 17, 1909, a plat of Rullman's Addition to the City of Portland was duly made and recorded; that the grantors and grantee in a deed hereinafter mentioned relied upon such plat and the surveyor's certificate which was a part thereof, as being in all respects accurate; that the map and attestation are incorrect in that they represent the main track of the Oregon-Washington Railway & Navigation Company to be in the center of the right of way of that company, adjoining the real property described in such deed, whereas the middle line of such track, as laid in the year 1909, opposite the easterly boundary of lot 6 of that addition is 2.58 feet south of the center of such right of way; thence following a curved line from the easterly boundary of that lot to the westerly boundary of lot No. 1 in that addition, to a point which is 4.22 feet south of the center of such right of way, giving also the respective distances from the easterly boundaries of lots No. 2, 3, 4 and 5 to the middle of such right of way; that on April 23, 1915, the defendants, George P. Eisman, Louise C., his wife, and the Co-operative Realty Company, being the owners in fee of the real property in Multnomah County, Oregon,

hereinafter specified, executed a deed wherein the premises were described as follows:

"Lots one (1), two (2), three (3), four (4), five (5), and six (6) of Rullman's Addition to the City of Portland, in said county and state, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in any wise appertaining."

This conveyance contained covenants to the effect that the grantors were lawfully seised in fee simple of the premises, and had a valid right to convey the same; that the lots were free and clear of all encumbrances except a specified mortgage and liens for public improvements, which liabilities the grantee assumed and agreed to pay; and that the grantors, their heirs, assigns, etc., would warrant and forever defend such premises against the lawful claims of all persons whomsoever, except those claiming under such liens; that at the time the deed was executed, the defendants were seised in fee of only parts of such lots which are indicated upon the plat, Exhibit "C," as follows:

"Beginning at the initial point described in said exhibit 'C,' thence east, tracing the south line of Broadway Street, 290.37 feet; thence south, at right angles to said line last described, 32.52 feet to a point on the north line of the O. W. R. & N. Company's right of way (the said O. W. R. & N. Co. being the successor to the said Oregon Railway & Navigation Company), said point being 50 feet northerly from the center of the main railroad track of the said right of way as the same was staked, located and laid upon the ground on and prior to the year 1885 or thereabouts; thence westerly on a curve at all points 50 feet distant from the center of the said railroad track as the same was staked, located and laid upon the ground about 1885, as aforesaid, to a point on the east line of East 33d Street, 76.18 feet south of the beginning point; thence

north, tracing the east line of East 33d Street, 76.18 feet to the place of beginning.''

That on April 23, 1914, the defendants were not, nor was either of them, the owner of all the real property described in their deed, nor have they or either of them since acquired the title to any part of the land, in addition to the premises last hereinbefore described, and that neither of them was then or thereafter seised in fee or otherwise of that part of such lots described as follows:

''Beginning at a point on the easterly line of said lot 6, fifty feet distant from and north of the center of the main track of said railroad as the same was staked, located and laid upon the ground on and prior to the year 1885, or thereabouts; thence westerly on a curve parallel to said center of said track at all points 50 feet distant therefrom to the east line of East 33d Street; thence south approximately 4.22 feet; thence easterly on a curve parallel to the center of the main track of said railroad as the same was located and laid upon the ground during 1909, and at all points 50 feet distant therefrom to a point south of and opposite to the place of beginning; thence north approximately 2.58 feet to the place of beginning.''

That since the year 1881 the Oregon-Washington Railway & Navigation Company, and its predecessors, but not the defendants nor either of them, has been and the railway company is now seised in fee of the strip of land last hereinbefore described, and the title of such company has been and now is paramount to that of the defendants in and to the same; that the approximate area of the tract of land so pretended to be conveyed by the defendants to the plaintiff is 14,300 square feet, and the number of square feet in the overlapping strip so owned by the railway company is 1,200, whereby the plaintiff failed to secure the title

to 8.39 per cent of the land described in the deed; that the plaintiff is still the owner of the real property, and of the whole thereof actually conveyed; that it paid the defendants therefor the sum of $10,000, stating the items constituting the consideration, and by reason of the failure to obtain the title to the entire tract so described in its deed, the plaintiff has been damaged in the sum of $839.

For a second cause of action, the averments of the first cause are substantially repeated, and it is alleged that the plaintiff has been evicted by the railway company from the strip of land last hereinbefore particularly described, which the company claimed under a paramount title. Judgment was demanded for the sum of $839, with interest from April 23, 1915, and for the costs and disbursements herein.

Demurrers to each of the separate matters thus set forth, interposed on the ground *inter alia* that the complaint did state facts sufficient to constitute a cause of action, were sustained and the plaintiff, declining to amend the initiatory pleading, the action was dismissed, and it appeals.                    AFFIRMED.

For appellant there was a brief submitted over the name of *Mr. W. B. Shively.*

For respondents there was a brief presented by *Mr. G. E. Hamaker.*

MOORE, J.—A blue-print of that part of the plat of Rullman's Addition to the City of Portland, Oregon, which is involved herein, was made a part of the complaint in this action. This map delineates a checkered curved line, extending easterly from that city and marked "Oregon Railway and Navigation Co." Parallel therewith are two other lines, the northerly one

being designated as "North line Right of Way." East 33d Street is represented as extending north and south, the east line of which is coincident with the west line of lot No. 1 in that addition. Lots numbered consecutively from one to ten are portrayed on the blue-print. Immediately north of these lots is depicted a street marked "Broadway." At the northwest corner of lot No. 1, as specified on the map, are the words "Iron Pipe, Initial Point." The north boundary of that lot is represented as being 40.37 feet wide, while the north lines of the other lots from two to six inclusive, are each indicated as being 50 feet. The west boundary of lot No. 1 from Broadway Street to the "North Line Right of Way" is marked 90.40 feet; the west line of lot No. 2 is 67.31 feet; No. 3, 54.27; No. 4, 45.15; No. 5, 39.04; No. 6, 35.59, and the east border of the latter lot is 35.10 feet. The complaint alleges that the west boundary of lot No. 1, as indicated upon the plat, extends upon and south of the north border of the right of way, 4.22 feet, and the eastern boundary thereof 3.33 feet, and that the east boundary of the other lots extends south of the north line of the right of way as follows: Lot No. 2, 3.10 feet; No. 3, 2.78; No. 4, 2.87; No. 5, 2.69; and No. 6, 2.58 feet. This action involves alleged breaches of seizin and of warranty of the title to a strip of land, bounded on the north and south by curved lines, which are separated from each other, and asserted to involve the right of way at the east end 2.58 feet, at the west 4.22 feet, and at intervening points, as hereinbefore indicated.

The affidavit and certificate of the person making the plat, who measured and subdivided the tract into lots, a part of which were conveyed by the defendants to the plaintiff, shows that the initial point mentioned is located 470.10 feet north and 30 feet east of the

quarter post between sections 25 and 36 in township 1 north, range 1 east of the Willamette Meridian. Assuming the quarter post so referred to can readily be found, no difficulty would be encountered in extending upon the ground the lines of Rullman's Addition, as indicated upon the plat thereof. There is also attached to the initiatory pleading the surveyor's affidavit, appended to the original plat, which sworn statement gives the initial point as stated, and contains a clause which reads:

"The description of the out boundaries of the tract platted is as follows: Beginning at the above mentioned initial point, thence east tracing the south line of Broadway (Street) 490.37 feet to a point; thence south at right angles to said south line 62.28 feet to a point on the north line of the O. R. & N. R. R. right of way; thence westerly tracing said north line of right of way to a point on the east line of E. 33d Street, 80.40 feet south of the beginning point; thence north tracing the east line of E. 33d Street 80.40 feet to the place of beginning."

1, 2. The surveyor's affidavit and certificate, which were attached to and made a part of the plat when it was filed for record, should be regarded as incorporated in the description thus set forth: 9 C. J. 220. Interpreting such attestation and sworn statement in the manner indicated, the southerly boundary of lots 1 to 6 inclusive, is thereby made coincident with the northerly line of the earlier survey of the right of way, thus recognizing such adjoining land as a monument which determines the measurement of the east and west lines of the several lots extending from Broadway Street south to the railway company's real property: *Pickman* v. *Trinity Church,* 123 Mass. 1, 5 (25 Am. Rep. 1). In that case Mr. Justice COLT, referring to a similar conveyance, observes:

"The defendant chose to bound the estate conveyed by it on the line of Thorndike's land. By the terms of the deed, his line was made a monument which controls the distances given and the quantity of land stated."

To the same effect is the case of *Percival* v. *Chase,* 182 Mass. 371, 377 (65 N. E. 800), where Mr. Justice LORING remarks:

"A monument governs measurements, and the land of an adjoining proprietor is a monument within that rule."

In *Couch* v. *Texas & P. Ry. Co.,* 99 Tex. 464 (90 S. W. 860), it was ruled that a call in a deed for a railroad right of way would, if unexplained, be treated as a call for another tract of land, thereby controlling conflicting calls for distance. See, also, upon this subject the extended notes to the case of *Matheny* v. *Allen,* 63 W. Va. 443 (60 S. W. 407, 129 Am. St. Rep. 984, 1005).

Our statute, prescribing the rules for construing the description of real property, declares:

"When permanent and visible or ascertained boundaries or monuments are inconsistent with the measurement, either of lines, angles, or surfaces, the boundaries or monuments are paramount": Section 878, Subd. 2, L. O. L.

3, 4. The demurrers admit all the averments of fact set forth in the complaint that are well plead, and of any reasonable and proper inference deducible therefrom: *Wills* v. *Nehalem Coal Co.,* 52 Or. 70 (96 Pac. 528). Construing the initiatory pleading in connection with the plat and the surveyor's certificate, it would appear that in measuring the land, the surveyor made mistakes in running the east and west boundaries of the several lots in Rullman's Addition too far south, thereby encroaching upon and extending such lines

south of the northerly boundary of the right of way at such places. · From an examination of the averments of the complaint it would seem that about the year 1885 the railroad was constructed along the center line of the right of way, which fronted upon the tract of land that was subsequently platted as Rullman's Addition; that about the year 1909 the track was moved southerly at the east line of East 33d Street 4.22 feet and at the east side of lot 6, 2.58 feet; that without knowing such change had been made, the surveyor assumed that the track then occupied the center line of the original survey, and extended the side lines of the lots described in the plaintiff's deed to points 50 feet from the middle of the track as he then found it, thereby overlapping the north boundary of the right of way to the extent indicated. But however this may be, as the plat which was of record when the plaintiff secured its deed, conclusively shows that the lots purchased extended only from Broadway Street south to the north boundary of the right of way, of which fact the grantee had notice, the surveyor's notations made upon the map to indicate the distances of the east and west lines of such lots, must necessarily yield to the north boundary of the survey of the railway company's easement.

Considering the averments of the complaint, the delineations of the plat, and the statements made in the surveyor's certificate and affidavit, it is evident that the defendants intended to convey and the plaintiff to acquire the legal title to only so much of the real property described in the deed as is situate between Broadway Street and the northerly limit of the right of way, and this being so no error was committed in sustaining the demurrer.

The judgment is therefore affirmed.

Affirmed.  Rehearing Denied.