134 So.2d 35 (1961)
Charles NANCE, Appellant,
v.
Linzy BALL and June Ball, his wife, and Donald L. Berg, Robert Berzin, Abraham Rosenthal and others, d/b/a Florida Lanes, Limited, a partnership under the laws of Florida, Appellees.
No. 2374.
District Court of Appeal of Florida. Second District.
November 3, 1961.
Sidwell & Cheatwood, Tampa, for appellant.
*36 Fowler, White, Gillen, Humkey & Trenam, Tampa, for appellees Donald L. Berg, Robert Berzin, Abraham Rosenthal and others, d/b/a Florida Lanes, Limited, a partnership under the laws of Florida.
WHITE, Judge.
Charles Nance obtained a $10,500 judgment against Linzy Ball because of a damaging assault upon him by the said Linzy Ball, but the trial court entered summary final judgment for the co-defendants Donald L. Berg, Robert Berzin and Abraham Rosenthal, who were operators of the bowling alley where the assault occurred. This is an appeal by Charles Nance from the summary judgment in favor of the said co-defendants.
Charles Nance and Linzy Ball were bowling in league competition when Nance was assaulted by Ball in the co-defendants' establishment. On duty were thirty-seven employees, two of whom had knowledge of the incident. Nance and Ball were on opposing teams and a near fight between them had been broken up by a team member. Ball had previously threatened to assault Nance. Later, on the same occasion, a heated discussion arose when Nance "kidded" Ball while the latter was bowling. Ball thereafter approached Nance and struck him with his fist or a bowling ball, fracturing his jaw and the bony structure on the left side of his face, knocking one of his eyes out of position, breaking his glasses and causing him to be hospitalized while undergoing surgery.
The plaintiff brought action for damages on two counts, the first against Linzy Ball as aforesaid and the second against the co-defendants for negligently failing to maintain order in their place of business and failing to restrain Linzy Ball or prohibit him from engaging in competition because of his "known propensity" for assaulting other patrons during temper flares over his bowling game. The co-defendants' motion to dismiss the complaint was denied. They then filed an answer admitting their operation of the bowling alley but denying the other allegations of the complaint.
The legal essence of the plaintiff's case against the operators of the bowling alley was that the said co-defendants had actual or constructive knowledge of Linzy Ball's temper and propensity toward violence; that they knew or should have known of his previous exhibitions of temper, his threats and his actual assault upon another patron several weeks prior to the incident involved in this case; but that notwithstanding such knowledge the co-defendants negligently failed to take reasonable preventive steps against the said Linzy Ball for the protection of other patrons, including the plaintiff, and that such negligence was a proximate contributory cause of plaintiff's injuries.
The co-defendants, in moving for summary judgment, offered no depositions or affidavits on their own account but relied upon the exhibits submitted by the plaintiff. The plaintiff submitted his own deposition, the deposition of Linzy Ball, the answers to interrogatories propounded to the co-defendants, and the affidavit of one Earl McLaughlin who was likewise a patron of the co-defendants.
Earl McLaughlin stated in his affidavit that about five weeks prior to the incident here involved he had been "joshing" with Linzy Ball when without warning Ball "* * * came over and knocked me off the bench upon which I was sitting sideways to the floor. * * *", and that this incident was witnessed by several employees of the bowling establishment. Earl McLaughlin did not, however, discuss the matter with the manager. The depositions and answers to interrogatories disclosed other facts and circumstances as recited in the preceding paragraphs, with the added fact that Linzy Ball went to the co-defendants' manager after his involvement with Earl McLaughlin and apologized for what he had done. This was sometime prior to his attack on the plaintiff.
*37 The trial court was of the opinion that the Earl McLaughlin affidavit, the answers to interrogatories and the two depositions before him were not sufficient to indicate that the co-defendants knew or should have known that Linzy Ball might assault the plaintiff. The court accordingly entered summary final judgment for the co-defendants.
The plaintiff's status as a business invitee and the other factual allegations of the complaint, together with the statements in the depositions and supporting affidavit submitted by the plaintiff, must be accepted as true and viewed in the light most favorable to the plaintiff. Schneider v. K.S.B. Realty & Investing Corp., Fla.App. 1961, 128 So.2d 398. It must also be accepted as law that the co-defendants owed the plaintiff and other business invitees the duty to exercise reasonable care to maintain the premises in a safe condition and to guard against subjecting patrons to dangers known or which reasonably might have been foreseen. See Gordon v. Hotel Seville, Fla. App. 1958, 105 So.2d 175; McNulty v. Hurley, Fla. 1957, 97 So.2d 185.
In Gordon v. Hotel Seville, supra, the plaintiff was a guest at the defendant's hotel and sued for injuries received when the plaintiff, while swimming in the pool, was struck by the body of a boy thrown into the pool by some boisterous patrons. The trial court entered summary judgment for the defendant hotel. In reversing, the court noted with approval Quinn v. Smith Co., 5 Cir., 1932, 57 F.2d 784, 785:
"It goes without saying, in fact, it is not disputed that proprietors of bathing pools owe to their patrons a duty to exercise due care, not only in providing a safe and proper place as such, but in policing and supervising the place to protect those coming there from wanton unprovoked assault and injury at the hands of other persons there."
In 2 Fla.Jur., Amusements, Sec. 43, the rule is stated:
"The owner or operator of a place of amusement to which the public is invited owes to invitees the duty of reasonable care to protect them from injury at the hands of his agents and employees, and may be chargeable with liability for injuries resulting from the acts or conduct of other patrons or third persons which could have reasonably been anticipated and guarded against."
The determinative question on this appeal is whether or not the summary proceedings sufficiently indicated that the co-defendants knew or should have known of a tendency on the part of Linzy Ball to assault other patrons while engaged in competitive bowling. This is an issue of material fact. If the proceedings failed to set forth any fact or circumstance from which such knowledge appeared or was inferable, the motion for summary judgment was correctly granted; otherwise the judgment was erroneous. Pierson v. Seale, Fla.App. 1961, 128 So.2d 887.
Some cases are clearly disposable by summary judgment. There are also marginal cases posing colorable issues which the trial court may consider so weakly supported as to indicate the futility of a full hearing on the merits. In such a case, where adherence to the rule of caution results in a denial of summary judgment, the court may feel that there has been an unjustified extension of fruitless litigation. Our own experience attests an occasional impulse to amputate at once rather than face the prospect of surgery by painful stages, but herein lies the occasional margin of error.
The trial court may be convinced that a doubtful or marginal case would be practically unprovable, and most frequently that could be the net result. We do not apprehend, however, that the denial of summary *38 judgment in such cases would likely result in ultimate miscarriage of justice. There are other stages along the procedural panorama where the court may terminate a case or control its direction, viz., (1) on motion for directed verdict at the conclusion of plaintiff's case, (2) on motion for directed verdict at the conclusion of all the evidence, (3) on motion for a new trial, and (4) on motion for judgment notwithstanding the verdict. There remains also the possibility that further proceedings might bring out added factors which could change the complexion of the case.
The record indicates that the co-defendants in this case had some knowledge of previous temper tirades and physical aggression on the part of the defendant Linzy Ball. This being the crucial question on appeal, we conclude that the plaintiff made a sufficient prima facie showing to withstand the co-defendants' motion for summary judgment.
Reversed.
SHANNON, C.J., and SMITH, J., concur.