617 S.E.2d 895

William R. VIA, Plaintiff
Below, Appellant

v.

Ralph BECKETT and Joan Beckett,
Defendants Below, Appellees.

No. 32055.

Supreme Court of Appeals of
West Virginia.

Submitted March 23, 2005.

Decided July 7, 2005.

**350**

William R. Wooton, The Wooton Law Firm, Beckley, for Appellant.

W.F. Richmond, Jr., Beckley, for Appellees.

PER CURIAM:

This case is before the Court on appeal from the February 26, 2004, Final Order of the Circuit Court of Raleigh County dismissing the case. The entry of the Dismissal Order effectively resolved any remaining issues in the case not previously considered by the circuit court in its September 30, 2002, Order, which granted partial summary judgment in favor of Appellees on the issue of a particular call in a deed and its significance in the determination of a disputed property line. The issues considered in the September 30, 2002, Order are the focus of this appeal.

This Court has before it the petition for appeal, the response, the briefs of the par-

ties, and all matters of record. Following the arguments of the parties and a review of the record herein,[1] this court finds that existing case law supports the position of the Appellees over that of the Appellant. Accordingly, the Court affirms the February 26, 2004, Order of the circuit court in favor of Appellees.

## I.

### FACTS

#### A. The Beckett Parcel

On December 7, 1972, Appellees Ralph Beckett and Joan Beckett obtained a parcel of land fronting on what is now East Main Street (but formerly Neville/East Neville Street) in Beckley, West Virginia (hereinafter, the "Beckett parcel"). The Becketts obtained the property from Robert W. Maples and Evalene Maples. The property had previously been deeded to Robert W. Maples and Lora Maples Mellon by Richard Lewis and Elizabeth Lewis on August 9, 1944. The Lewises had obtained the property from Stansbury, Callaway & Scott, Inc. (hereinafter, "Stansbury"), on May 13, 1924.

The 1944 Lewis–to–Maples deed and the 1972 Maples–to–Beckett deed contain this description of the parcel:

> Beginning at a stake on the northeast edge of Neville Street, a fence post and corner to Daniel Boone; thence with said Street N 65 10 E 47⁷⁄₁₀ feet to a stake, corner to Lot No. 2; thence with the line of the same a straight line parallel to the line of the lot formerly owned by Tobin Stover, N 10 30 W 150 feet to a stake on an alley to a right-of-way, conveyed by Stansbury, Callaway & Scott, Inc. [sic] a corporation, to Claude Jarrett; thence a straight line parallel to East Neville Street and 150 feet distant thereto and with said right-of-way about 49½ feet to a stake in the line of the fence of Daniel Boone, and thence with his line about 150 feet to the place of beginning.[2]

---

**1.** Appellant designated that the entire record be submitted with the appeal. It was later discovered that the original case file did not contain the Appellees' Motion for Summary Judgment, the disposition of which is at the very heart of this appeal. It would appear from the transcript of a hearing conducted on August 19, 2002, that the Motion was filed that morning, perhaps just be-

fore the hearing began. For whatever reason, the Motion is not to be found in the original case file.

**2.** The 1924 Stansbury–to–Lewis deed contained a slightly different description of the parcel:

> Beginning at a stake on the northeast edge of Neville Street, a fence post and corner to Dan-

Upon the Beckett parcel are situated a house, an asphalt parking surface, garage apartments, and an outbuilding.

## B. The Via Parcels

On May 10, 1996,[3] Appellant William R. Via obtained two parcels of land from James Ansel Lilly. One of the parcels relevant to this matter was a fifteen-foot alley (hereinafter, the "Lilly–Via lot"). Situated upon the Lilly parcels was a one-story block building, which housed a gun and pawn shop. Upon discovering that the gun and pawn shop encroached on an adjoining lot, Via obtained the adjoining tract of land from Mary Lou Simpson on June 10, 1999.[4] It is the former Simpson property (hereinafter, the "Simpson–Via lot") that is at issue in this case.

The Simpson–Via lot is apparently descended from the same original grantor as the Beckett parcel; that is, the Simpson–Via lot can be traced back to Stansbury. Stansbury obtained the lot from R.M. French, who obtained the lot in a trust deed from Perry A. Cook. The lot was described as follows:

> Beginning at a stake at the intersection of East Neville Street, with East Park Avenue thence with East Park Avenue N 10 30 W 150 feet to a stake; thence leaving said Avenue S 65 10 W 49–⅓ feet to a stake, a corner to Lot No. 1; thence with the line of Lot No. 1 S 10 30 E 150 feet to a stake at the edge of East Neville Street, and thence with East Neville Street N 65 10 E 49⅓ feet to the place of beginning, containing 7400 sq. ft.

That parcel was eventually conveyed to D.V. Lilly by Stansbury. Because none of the subsequent deeds relating to the lot were

made part of the record (or, at least, are not part of the record presented to this Court), the Court cannot be clear as to how the land was conveyed to Simpson, who ultimately conveyed the parcel to Via.

The dispute herein focuses on the location of the common property line representing the western boundary of the Simpson–Via lot and the eastern boundary of the Beckett parcel. Though the deed conveying that property to Via is not part of the record, both parties agree that the Simpson–Via lot was described in that deed in the same manner as the lot was described in the Cook–to–French trust deed noted above.

## C. The Boundary Dispute & Procedural History

After obtaining the Lilly–Via lot, and discovering that the gun and pawn shop situated on the lot encroached on the Simpson lot and possibly on the Beckett parcel, Via commissioned Harold R. Snodgrass, a civil engineer, to survey the Lilly–Via lot in 1999.[5] At that time, Snodgrass determined that the gun and pawn shop did indeed encroach on both the Simpson lot and the Beckett parcel. As referenced above, Via then purchased the Simpson lot (thereafter, the "Simpson–Via lot").

In June of 2000, Via commissioned James E. Wentz, a surveyor by experience, to survey both the Lilly–Via and Simpson–Via lots. Unlike Snodgrass, Wentz found no encroachment of the gun and pawn shop on the Beckett parcel, but determined instead that a building on the Beckett parcel containing garage apartments encroached on a portion of the Simpson–Via lot by a little more than one foot.

---

iel Boone; thence with said Street N 65 10 E 47¹/₁₀ feet to a stake, corner to Lot No. 2; thence with the line of the same a straight line parallel to the line of the lot formerly owned by Tobin Stover, N 10 30 W 150 feet to a stake on an alley to a right-of-way, recently conveyed by *by* [sic] the party of the first part to Claude Jarrett; thence a straight line parallel to East Neville Street and 150 feet distant thereto and with said right-of-way about 49⅓ feet to a stake in the line of the fence of Daniel Boone, and thence with his line about 150 feet to the place of beginning.

3. Appellant Via asserts in his brief that he obtained the first two parcels (from James Ansel

Lilly) on May 10, 1996; however, Appellees Beckett assert that Mr. Via obtained the first two parcels on May 10, 1995. The Lilly–Via deed is not part of the record in this case, so this Court will have to assume that Mr. Via knows when he obtained the property.

4. The record also does not contain the Simpson–Via deed.

5. Though Snodgrass was only preparing a survey of the Lilly–Via lot, he did research the surrounding lots, including the Simpson–Via and Beckett lots, in order to determine how the area was laid out and where the Lilly–Via lot boundaries should be placed.

The discrepancy in the surveys of Wentz and Snodgrass followed from their different interpretations of the property descriptions contained in the relevant deeds. Snodgrass focused on the language of both deeds describing a common line between the Beckett parcel and the Simpson–Via lot. That call described a line "N 10° 30' W 150 feet," and the call in each deed referred to the neighboring lot.[6] Snodgrass determined that this line, which was common to both sets of deeds, was a monument and based the rest of his survey on that monument.

Wentz, on the other hand, focused on certain other language found in the Beckett deed only. He focused on language that called for a line:

> "Beginning at a stake on the northeast edge of Neville Street, a fence post and corner to Daniel Boone [the lot on the western edge of the Beckett parcel]; thence with said Street N 65 10 E 47 ⁷⁄₁₀ feet to a stake, corner to Lot No. 2; thence with the line of the same *a straight line parallel to the line of the lot formerly owned by Tobin Stover* [also known as the Daniel Boone lot], N 10 30 W 150 feet to a stake on an alley to a right-of-way, conveyed by Stansbury, Callaway & Scott, Inc. [sic] a corporation, to Claude Jarrett. . . ." (Emphasis added.)

Wentz determined that the line N 10° 30' W 150 feet was not parallel to the line of the lot formerly owned by Tobin Stover; therefore, he assumed that the call to a line N 10° 30' W 150 feet must have been a typographical or clerical error. Relying on this assumption, he prepared a survey map setting the boundary line between the Beckett parcel and the Simpson–Via lot parallel to the Tobin Stover/Daniel Boone lot, now following a call of N 18° 30'W 150.16 feet rather than the call of N 10° 30'W 150 feet contained in both deeds.[7]

Thereafter, Via and the Becketts tried, without success, to resolve the alleged encroachments and the growing property dispute. Indeed, Mr. Beckett ultimately commissioned Snodgrass to draw up yet another map, this time with a proposed boundary adjustment which would remedy all the encroachments. No compromise was reached. Based upon Wentz's findings, Via filed suit in the Circuit Court of Raleigh County on July 24, 2000, seeking damages in the amount of $10,000. Via's complaint alleged trespass, asserting that the Becketts knew of the encroachment but did nothing to remedy it. The Becketts filed a timely answer on August 2, 2000.

On August 19, 2002, the Becketts filed a Motion for Summary Judgment.[8] A hearing was held regarding the motion on August 29, 2002, at which time the Becketts argued that there were no material issues of fact in the case because the call to the line N 10° 30' W 150 feet was found in both the deeds for the Beckett parcel and the Simpson–Via lot; therefore, the Becketts contended, it was a monument to be given the highest authority. Via argued that the accuracy was open to question because of the other language in the Beckett deed calling for a line parallel to the Tobin Stover/Daniel Boone lot and calling for certain distances which could not be reconciled with the call of line N 10° 30' W 150 feet. Via asserted that this alleged discrepancy left open a question of fact.

On September 30, 2002, the circuit court issued an Order Granting Partial Summary Judgment in favor of the Becketts. Among other things, the circuit court found that both

---

6. That is, the deed description for Appellees' Beckett parcel called for a line beginning at the "corner of Lot 2," which is the Simpson–Via lot, "N 10 30 W 150 feet to a stake on an alley to a right-of-way, conveyed by Stansbury, Callaway & Scott, Inc. [sic] a corporation, to Claude Jarrett." The description for the Simpson–Via lot called for a line "[b]eginning at a stake at the intersection of East Neville Street, with East Park Avenue thence with East Park Avenue N 10 30 W 150 feet to a stake, a corner to Lot No. 1," which is the Beckett parcel.

7. The line N 18° 30'W 150.16 feet was actually not parallel to the line of the lot formerly owned by Tobin Stover. However, it was closer to being parallel than the line N 10° 30' W 150 feet.

8. Again, the Motion is not a part of the case file or record as presented to this Court. It is, however, mentioned in the transcript of the August 19, 2002, pretrial hearing held before Judge Hutchison. That transcript indicates that the Motion was filed that morning. The Motion is acknowledged in the transcript of the August 29, 2002, hearing on the Motion for Summary Judgment.

surveyors, in deposition testimony, agreed that the call bearing N 10° 30′ W 150 feet was a monument. Finding this call to be a monument, the circuit court concluded "that there is no genuine issue of a material fact concerning the line because it is undisputed that the common line given in the deeds for both [the Beckett parcel] and [the Simpson–Via lot] is a monument and is given the highest priority in items to consider in ascertaining a boundary line." The court noted that the issues of encroachment and adverse possession remained viable, however.

For some reason, neither party received notice of the circuit court's decision until January 31, 2003, when the parties came before the circuit court on a Motion to Join an Indispensable Party. After the parties were made aware of the Order Granting Partial Summary Judgment, they agreed that the Order Granting Partial Summary Judgment, in fact, denied the relief sought by Via and effectively dismissed the case. The line established by the Order left encroachments by Via on the property of the Becketts. However, the Becketts had not counterclaimed for any encroachments on their property. Furthermore, because the encroaching buildings had been in existence since the 1920s or early 1930s, the Becketts agreed that they could not ask that they be moved. Accordingly, an Order of Dismissal was entered on February 26, 2004.

Via now appeals the February 26, 2004, Order of Dismissal arguing that in its September 30, 2002, Order Granting Partial Summary Judgment, the court erred in finding that Wentz agreed that the call to line N 10° 30′ W 150 feet is a monument, in failing to consider and give proper weight to the true intention of the common grantor in determining the line dividing the Beckett and Via properties, and in concluding that identical courses and distances calls in deeds to adjoining tracts are monuments.

## II.

### STANDARD OF REVIEW

This Court has held that " ' "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770,

461 S.E.2d 516 (1995).' Syl. Pt. 1, *State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, 200 W.Va. 221, 488 S.E.2d 901 (1997)." Syl. Pt. 1, *Bowers v. Wurzburg*, 205 W.Va. 450, 519 S.E.2d 148 (1999). Similarly, this Court recently held in Syllabus Point 1 of *West Virginia Dept. of Transp., Div. of Highways v. Robertson*, No. 31770, 2005 WL 1124401 (W.Va., May 10, 2005) that "[a]ppellate review of a partial summary judgment order is the same as that of a summary judgment order, which is *de novo*." *See generally*, Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*.") With those standards in mind, we turn now to a discussion of the facts as they apply to the law in this case.

## III.

### DISCUSSION

This Court has held that " ' " '[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syl. Pt. 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syl. Pt. 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).' Syl. Pt. 1, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995)." Syl. Pt. 4, *Pritt v. Republican Nat. Committee*, 210 W.Va. 446, 557 S.E.2d 853 (2001). Here, it is clear that there is no material issue of fact in dispute such as would require a trial to determine the boundary line between the Beckett and Via properties. As found by the circuit court below, the boundary line is clearly delineated in both deeds by the call to line N 10° 30′ W 150 feet. That is the only material fact to this boundary issue. Since we conclude that there is no dispute as to this material fact, there is no need nor requirement for trial on the matter. " '[S]ummary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an

essential element of the case that it has the burden to prove.' Syl. Pt. 2, *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995)." Syl. Pt. 3, *Kiser v. Caudill,* 215 W.Va. 403, 599 S.E.2d 826 (2004). Given that the boundary line is located at N 10° 30' W 150 feet and given that the placement of that line undisputedly does not cause any encroachment by the Becketts on Via's property, Via has failed to make a showing of trespass by the Becketts. Therefore, we find that summary judgment was appropriate in this case.

### A. Wentz's Testimony as to the Call to Line N 10° 30' W 150 feet

■ Via's first argument raises the issue of whether the lower court erred in finding that Wentz agreed that the specific call to line N 10° 30' W 150 feet is a monument establishing the property line between the east side of the Beckett parcel and the west side of the Simpson–Via lot. Via argues that while Wentz agreed (and Via concedes) that calls to an adjoining property line are monuments, he (Wentz) did not agree that the call to line N 10° 30' W 150 feet is a monument. Via argues that Wentz did not believe that the line N 10° 30' W 150 feet was the correct call for the boundary between the Beckett parcel and the Simpson–Via lot. Rather, Via contends, Wentz believed that the language in the deed called for the boundary line to be parallel to the boundary line between the Tobin Stover/Daniel Boone lot and the Beckett parcel. The line N 10° 30' W 150 feet is not parallel to the boundary line between the Tobin Stover/Daniel Boone lot and the Beckett parcel (the west side of the Beckett parcel).

The record, however, confirms that Wentz did agree in his deposition testimony that a common call line in separate deeds is a monument and that in this case, the line N 10° 30' W 150 feet was such a monument:

Counsel for the Becketts: Now, both the original deed from Stansbury, Callaway and Scott to Lewis and the trust deed from France [sic] to Callaway Scott which is the Via property, the original deeds and descriptions, both called for the exact same line, North 10 30 West between the two. Both refer to that line as being the boundary and that's what they say, so that's a

natural description and monumented in each deed. Isn't that correct if they call for the same line and describe it?

Wentz: Yes.

Counsel for the Becketts: And both of them are North 10° 30 West 150 feet?

Mr. Wentz: Yes.

Via contends that this particular line of questioning was convoluted and hard to understand. He contends that Wentz, in his answers to these questions, agreed to nothing more than that the line described in both deeds was the line of N 10° 30' W 150 feet. Via asserts that otherwise in his testimony, Wentz maintained that he believed that that description of the line did not accurately describe the location of the boundary between the Beckett parcel and the Simpson–Via lot. Nevertheless, the line, described identically in both deeds, is what it is.

Via further argues that Wentz continuously pointed out that, in conducting his survey, he (Wentz) focused (a) on the language in the Beckett deed describing the boundary line between the Beckett parcel and Simpson–Via lot as "parallel" to the Tobin Stover/Daniel Boone lot and (b) on the language describing the distances between certain monuments and markers because they were more easily reconciled to one another. Via argues that where the distance is more easily reconcilable with the other evidence in the deed than the course may be, it is more appropriate to follow distance over course.

■ " 'It is a general rule that, in locating boundaries of land, resort is to be had first to natural landmarks, next to artificial monuments, then to adjacent boundaries, and last to courses and distances.' Syl. Pt. 1, *Matheny v. Allen,* 63 W.Va. 443, 60 S.E. 407 (1908)." Syl. Pt. 7, *Blain v. Woods,* 145 W.Va. 297, 115 S.E.2d 88 (1960). In *West Virginia Pulp & Paper Co. v. J. Natwick & Co., et al.,* 123 W.Va. 753, 21 S.E.2d 368 (1941) this general rule was explained, adding that course controls over distance or distance over course "according to the circumstances."

In the instant case, there are no natural landmarks by which to mark the line between the Beckett and Via properties. The

only artificial monument marking the line between the two properties is a nail placed at the corner of the properties (along East Main Street) by Wentz when he performed his survey for Via. Next, adjacent boundaries are considered in identifying the property line. Here, the deeds for both the Beckett parcel and the Simpson–Via lot identify the same adjacent property line originating from a common starting point, which is a stake located at the corner of Lot 1 (the Beckett parcel) and Lot 2 (the Simpson–Via lot). That is, the Beckett deed calls for the eastern boundary of the Beckett parcel to be located at the line N 10° 30′ W 150 feet. Likewise, the Simpson–Via deed calls for the western boundary of the Simpson–Via lot to be located the along the same line, N 10° 30′ W 150 feet. *Matheny* dictates that this adjacent boundary be given priority over distances. In other words, as the circuit court found below, this adjacent boundary line must be used to determine the remainder of the Beckett and Via properties before resort to the distance calls that Via would seek to use. Again, the line is what it is.

## B. The Intention of the Original Grantor

■ Via next argues that it was error for the circuit court to hold that the common metes and bounds description in the deeds to the Via and Beckett properties was a monument. Via asserts that it is likely that the matching descriptions simply resulted from the common grantor's use of the descriptive language used in the senior grant (the Via property) when drafting the description of the junior grant (the Beckett parcel) without first checking the accuracy of the description of the line through a survey. Via further asserts that a trace of the deeds to the Beckett parcel and the Simpson–Via lot reveals Stansbury's intent to subdivide the lot into three equal and parallel tracts. To support this proposition, Via relies on the language in the deeds calling for a line parallel to the Tobin Stover/Daniel Boone lot marking the eastern boundary of the Beckett parcel and calling for equal frontage of the three tracts on East Main Street. The Court, however, finds this argument disingenuous because the survey maps show that the greater tract from which the Beckett and Via properties were carved is shaped such that it

would simply not be possible to divide the tract into three equal and parallel tracts. Via's argument is, without more, based on speculation.

■ Via argues that " '[i]n construing a deed, will or other written instrument, it is the duty of the court to construe it as a whole, taking and considering all the parts together, and giving effect to the intention of the parties wherever that is reasonably clear and free from doubt, unless to do so will violate some principal of law inconsistent therewith.' Syl. Pt. 1, *Maddy v. Maddy*, 87 W.Va. 581, 105 S.E. 803 (1921)." Syl. Pt. 2, *Belcher v. Powers*, 212 W.Va. 418, 573 S.E.2d 12 (2002). We agree. However, it is abundantly clear from this record that, construing the deeds as a whole, it was the intention of the original grantor that the line marking the boundary between the Beckett and Via properties be placed at N 10° 30′ W 150 feet since this is reflected in both deeds, not that the Beckett parcel be a parallelogram as determined by the line of the Tobin Stover/Daniel Boone lot when equal and parallel lots simply are not possible.

We note also that the Simpson–Via lot was the senior "out conveyance" from the larger tract, and there is no ambiguity in its deed description. The description of the line N 10° 30′ W 150 feet causes no problem in reconciling the other calls in the description of the Simpson–Via lot. Rather, it is the language of the deed description for the Beckett parcel that holds discrepancies, namely that the boundary line between the Beckett parcel and Simpson–Via lot be parallel to the Tobin Stover/Daniel Boone lot on the western boundary of the Beckett parcel. Distilled to its essence, Via seeks to benefit from a discrepancy in the Beckett deed description when his own deed description-the senior deed description—is unambiguous and specifically sets the mutual boundary at N 10° 30′ W 150, identical to the boundary call set forth in the Beckett deed.

A review of the property reveals that it makes no sense to give meaning to the language relied on by Via calling for the eastern boundary line of the Beckett property to be parallel to the Tobin Stover/Daniel Boone lot because to do so would create a pie-shaped

gap between the Beckett parcel and the Simpson–Via lot. Such a result cannot have been the intention of the original grantor. Given the mutual call of N 10° 30′ W 150 feet in both deeds, the pie-shaped gap which results from Via's argument, and the lack of any other evidence of a contrary intention, we find that the court below did not err in finding that the intention of Stansbury was to set the boundary between the Beckett parcel and the Simpson–Via lot at the line N 10° 30′ W 150 feet. We turn to Via's third argument.

### C. Identical Courses and Distances Call in Deeds as Monuments

Via's final argument is that the lower court erred in concluding that identical courses and distances calls in deeds to adjoining tracts are monuments. Via asserts that the law in West Virginia is that when a deed description uses an adjoining, *undisputed* property line as part of the description of the property, then that adjoining property line itself becomes a monument. Via again argues that although there is a shared course and distance description of a line here (N 10° 30′ W 150 feet), the location of that line is still in dispute. As we have explained, it is not.

■ Via correctly notes that "[i]n ascertaining a disputed boundary the calls in the respective deeds cannot be disregarded, if they can be applied and harmonized in any reasonable manner." Syl. Pt. 1, *Somon v. Murphy Fabrication & Erection Co.*, 160 W.Va. 84, 232 S.E.2d 524 (1977). *See also, Gauley Coal Land Company v. O'Dell*, 144 W.Va. 730, 736, 110 S.E.2d 833, 837 (1959). The *Somon* case is particularly interesting because it involved a property dispute wherein the two deeds in issue called for almost identical lines: The Somon deed called for a line "... thence S. 47 48 W. 275 feet; thence thence [sic] S. 72 48 W. 217 feet to a stake; thence across Painter [sic] Run N. 31 12 W. 783.75 feet...." Likewise, the Murphy deed called for a line "... thence with the Hillside, south of Painters Run, S. 47 48 00 W. 273.0 feet and south 72 48 00 W. 217.00 feet; thence leaving said hillside and crossing Painters Run, N. 31 12 00 W. 683.75 feet to a point in a fence line; ...." *Somon*, 160 W.Va. at 86–87, 232 S.E.2d at 526–527. In *Somon*, we noted that, except for the two-foot difference in distance manifested be-

tween the two calls of S. 47 48 E., which we did not regard as significant, the two lines were in common. *Somon*, 160 W.Va. at 88, 232 S.E.2d at 527.

The Court went on to observe, "Here not only were the calls in the two deeds in harmony in the disputed area, but both deeds gave the same call for crossing Painters Run from a line that was south of it. ... Thus, we have a concurrence of the calls in the two deeds along the disputed area, coupled with a parallel crossing on the same line of Painters Run, all of which serve to establish the common boundary...." *Somon*, 160 W.Va. at 88–89, 232 S.E.2d at 527–528. Here the deeds for the Beckett and Via properties similarly call for the same line of the same distance; that is, N 10° 30′ W 150 feet. Moreover, they both reference the same point from which that line extends: a stake at the corners of the Beckett parcel and the Simpson lot. Quite simply, these two identical calls cannot be disregarded when they can be applied in a reasonable manner.

■ "'Calls in a deed for an adjoining tract of land are calls for a monument, and where the location of such adjoining tract of land is certain it becomes a monument of the highest dignity.' Syl. Pt. 4, *Vandal et al. v. Casto et al.*, 81 W.Va. 76, 93 S.E. 1044 (1917)." Syl. Pt. 2, *Westover Volunteer Fire Dept. v. Barker*, 142 W.Va. 404, 95 S.E.2d 807 (1956) (rehearing denied March 5, 1957). Via argues that *Vandal* does not apply to the instant case because, in fact, the boundary line between the Beckett parcel and the Simpson lot is in dispute. It is not. Although Via *wants* to dispute the line, there is no real dispute. Both the Via and Beckett deeds call for the same boundary line of N 10° 30′ W 150 feet. That line's location can be easily ascertained, and so "it becomes a monument of the highest dignity." The record reveals no genuine issue of material fact.

If there is no genuine issue of material fact with regard to the location of the boundary line between the Beckett parcel and the Simpson–Via lot, and if the location of the line does not create a trespass by the Beckett's on Via's property, then no contestable issues arise from Via's complaint. Indeed, there remains no complaint at all.

## IV.

### CONCLUSION

Having established that there remains no issue of material fact to be determined through trial or any other issues to sustain Via's complaint, this Court finds that it was not error for the Circuit Court of Raleigh County to enter an Order dismissing the case based upon its entry of an Order Granting Partial Summary Judgment in favor of Appellees.

Affirmed.

Chief Justice ALBRIGHT dissents and files a separate opinion joined by Justice STARCHER.

ALBRIGHT, Chief Justice, dissenting.

I respectfully dissent to the majority opinion because I believe that a genuine issue of material fact exists concerning the location of the property line in this case. As the majority acknowledges, the language of the deed description for the Beckett parcel contains discrepancies. While both the Via deed and the Beckett deed specify the boundary at N 10° 30' W 150 feet, the Beckett deed description contains other language calling the boundary line into question. Specifically, the Beckett deed description states that the boundary is parallel to a boundary line along the Tobin Stover/Daniel Boone lot. That statement is inconsistent with the reference to N 10° 30' W 150 feet. Further, the Beckett deed description references certain monuments and markers, creating additional inconsistencies regarding the location of the disputed boundary. Even the surveys submitted into evidence resulted in contradictory findings regarding the location of the Via/Beckett boundary.

Despite the existence of those inconsistencies, the majority of this Court concludes that the circuit court was correct in granting summary judgment. In providing plenary review of a grant of summary judgment, "the benefit of the doubt" is to be given to the nonmoving party. *Taylor v. Culloden Pub. Serv. Dist.*, 214 W.Va. 639, 644, 591 S.E.2d 197, 202 (2003). Both the circuit court and this Court "must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion." *Painter v. Peavy*, 192 W.Va. 189,

192, 451 S.E.2d 755, 758 (1994). Furthermore, this Court explained in *Crain v. Lightner*, 178 W.Va. 765, 364 S.E.2d 778 (1987), that "[i]f there is any evidence in the record from any source from which a reasonable inference in the nonmovant's favor may be drawn as to a material fact, the moving party is not entitled to a summary judgment." 178 W.Va. at 769, 364 S.E.2d at 782. A court does not have a right to "try issues of fact; a determination can only be made as to whether there are issues to be tried." *Hanlon v. Chambers*, 195 W.Va. 99, 105, 464 S.E.2d 741, 747 (1995).

A subtle inclination may exist to grant summary judgment in particularly weak cases. As observed in *Nance v. Ball*, 134 So.2d 35 (Fla.App.1961),

Some cases are clearly disposable by summary judgment. There are also marginal cases posing colorable issues which the trial court may consider so weakly supported as to indicate the futility of a full hearing on the merits. In such a case, where adherence to the rule of caution results in a denial of summary judgment, the court may feel that there has been an unjustified extension of fruitless litigation. Our own experience attests an occasional impulse to amputate at once rather than face the prospect of surgery by painful stages, but herein lies the occasional margin of error.

134 So.2d at 37. In analyzing the issue of the propriety summary judgment, "[c]aution and discernment should go hand in hand where the power to enter summary judgment or decree is exercised, for such a power wields a dangerous potential which could have the effect of trespass against fundamental and traditional processes for determining the rights of litigants." *Humphrys v. Jarrell*, 104 So.2d 404, 408 (Fla.App.1958) (citations omitted).

In the present case, while the jury may well have resolved the issues in precisely the same manner as those issues were resolved through the summary judgment mechanism, the fact remains that it is the jury's question to answer, not the court's question. Based upon my opinion that a genuine issue of

**358**

material fact exists regarding the location of the property boundary in the present case, I believe that summary judgment was improper in this case. I therefore respectfully dissent.

I am authorized to say that Justice STARCHER joins me in this dissent.